UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

NORMAND DUMAIS, JR.,               )
& AMANDA AMES                      )
                                   )
Plaintiffs                         )
                                   )
v.                                 )          Civil Action No.:
                                   )
UNITED STATES OF AMERICA           )
                                   )
and                                )
                                   )
ASM INDUSTRIES, INC. D/B/A PACER PUMPS  )
                                   )
                                   )
Defendants                         )


I.      **CLAIMS AGAINST THE UNITED STATES OF AMERICA UNDER THE FEDERAL TORTS CLAIMS ACT**

**PRELIMINARY STATEMENT**

1.  This is an action against the defendant, United States of America, under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. and 28 U.S.C. § 1346(b), for negligence in connection with personal injuries that Mr. Dumais sustained on July 15, 2019 at the Pease Air National Guard Base in Newington, New Hampshire.

2.  The claims herein are brought against the defendant pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. and 28 U.S.C. § 1346(b) for money damages as compensation for personal injuries caused by the defendant's negligence.

3.  The Plaintiffs have fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act.

**JURISDICTION**

4. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1346(b) and 2671.

**VENUE**

5. Venue is proper for the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1391(e)(1)(B).

**PARTIES**

6. Plaintiff Normand Dumais, Jr. is a resident of 132 Jobin Drive, in City of Manchester, Hillsborough County, New Hampshire.

7. Plaintiff Amanda Ames is a resident of 132 Jobin Drive, in City of Manchester, Hillsborough County, New Hampshire.

8. Plaintiff Amanda Ames, is, and at all times relevant hereto was, the lawful spouse of Normand Dumais, Jr.

9. The defendant, United States of America, through its agency, the 157th Air Refueling Wing of Air National Guard of New Hampshire, operates an Air National Guard base at 302 Newmarket Street, in Town of Newington, Rockingham County, New Hampshire.

**JURISDICTIONAL PREREQUISITES**

10. Pursuant to 28 U.S.C. §§ 2672 and 2675(a), Plaintiff Normand Dumais, Jr. filed his claim with the Defendant on June 1, 2021. More than six months have passed without action on that claim.

11. Pursuant to 28 U.S.C. §§ 2672 and 2675(a), Plaintiff Amanda Ames filed her claim with the Defendant on June 1, 2021. More than six months have passed without action on that claim.

12. Accordingly, both plaintiffs complied with the jurisdictional prerequisites and conditions precedent to the commencement and prosecution of this litigation.

## FACTS

13. At all times relevant, Mr. Dumais was employed as a firefighter for the Pease Fire Department at Pease Air National Guard Base Fire Department in Newington, New Hampshire.  He was employed by the State of New Hampshire.

14. Foam trailer pumps, which contain 100% concentrated Aqueous Film-Forming Foam (AFFF), were located on site at the Pease Fire Department.

15. AFFF is known to cause cancer.

16. The foam trailer pumps were the responsibility of and were maintained by employees or agents of the United States through its agency, the 157th Air Refueling Wing of the Air National Guard New Hampshire.

17. Employees or Agents of the United States were responsible for pump set up.

18. Unbeknownst to Mr. Dumais, prior to July 15, 2019, one of the pumps, Pease Fire Department AFFF Resupply Trailer #2 (Pacer SEB2UL E51C) ("Subject Pump") had begun to exhibit issues when in use.

19. Upon information and belief, problems with the pump had previously been reported to employees or agents of the United States.

20. Despite notice of problems with the Subject Pump, it was left in service in a defective condition and nothing was done to fix the pump or warn others of the danger it may pose.

21. On July 15, 2019, Mr. Dumais was conducting a routine inspection of the Subject Pump.

22. At all times relevant, Mr. Dumais was using reasonable care while inspecting the Subject Pump.

23. However, unbeknownst to Mr. Dumais, the Subject Pump was unreasonably dangerous.

24. Shortly after beginning his inspection, the Subject Pump began making an abnormal sound.

25. Mr. Dumais attempted to turn the pump off, but it exploded before he could finish.

26. The force of the explosion threw Mr. Dumais backward and knocked his safety glasses off his face.

27. Pressurized AFFF firefighting foam shot at Mr. Dumais from the Subject Pump and into his eyes, nose, and mouth. As a result, he unwillingly ingested the firefighting foam.

28. As a direct and proximate result of the dangerous condition of the Subject Pump and defendant's negligence, Mr. Dumais suffered severe and ongoing injuries, which include but are not limited to esophagitis, gastritis, chemical burns, a concussion, post-concussion syndrome, cognitive issues, acoustical trauma, and aggravated tinnitus.  Further, having been significantly exposed to AFFF, Mr. Dumais now has a serious risk of developing cancer and this risk of cancer has caused and continues to cause Mr. Dumais and his wife to suffer emotional distress.

## COUNT I

### (Normand Dumais, Jr.'s Negligence Claim Against the United States)

29. Plaintiffs reallege each allegation above as if set forth herein.

30. United States had a duty to use reasonable care to set up, operate, inspect, and maintain the Subject Pump in a safe condition.

31. The United States breached its duty by negligently failing to properly set up, operate, inspect, and maintain the Subject Pump in a reasonably safe condition.

32. The United States had a duty to warn others using the Subject Pump of its dangerousness.

4

33. The United States breached its duty by failing to adequately warn the plaintiff of the hazardous and unsafe condition.

34. The United States had a duty to properly train and provide supervision to those responsible for operating and maintaining the pump and any associated equipment.

35. The United States breached this duty by failing to properly train and provide supervision to those responsible for operating and maintaining the pump and any associated equipment. Organizational training was inadequate or unavailable.

36. The United States had a duty to provide appropriate policies and procedures regarding equipment for which it was responsible, such as the Subject Pump.  The United States also has a duty to provide appropriate procedural guidance and publications regarding equipment for which it was responsible, such as the Subject Pump.

37. The United States breached this duty by failing to develop and implement appropriate policies and procedures for the Subject Pump.  Further, procedural guidance and publications were inadequate or unavailable.

38. The United States had a duty to users of equipment, such as Mr. Dumais, to select, set up, and provide an appropriate pump and associated equipment to circulate firefighting foam.

39. The United States breached this duty by failing to select, set up, and provide an appropriate pump to circulate firefighting foam.

40. As a direct and proximate result of the defendant's negligence, the plaintiff suffered serious and permanent injuries, including but not limited to, esophagitis, gastritis, chemical burns, a concussion, post-concussion syndrome, cognitive issues, acoustical trauma, aggravated tinnitus, increased risk of cancer, and emotional distress.

41. As a further direct and proximate result of the defendant's negligence, the plaintiff has suffered permanent impairment, significant pain and suffering, and loss of enjoyment of life.

42. The acts and/or omissions set forth above would constitute a claim under the law of the State of New Hampshire.

43. The defendant is liable to the plaintiff pursuant to 28 U.S.C. § 1346(b)(1).

## COUNT II

### (Amanda Ames's Loss of Consortium Claim Against the United States)

44. Plaintiffs reallege each allegation above as if set forth herein.

45. Plaintiff Amanda Ames states that she is and at all relevant times herein mentioned was the lawful wife of the Plaintiff Normand Dumais, Jr.

46. As a direct, proximate and foreseeable result of the Defendants' negligence, Plaintiff Amanda Ames did suffer and continues to suffer the loss of service, society, and companionship of the Plaintiff Normand Dumais, Jr. which she enjoyed prior to the incident alleged in this Complaint.

## RELIEF SOUGHT

Plaintiffs seek judgment against Defendant for the amount of actual damages; for such other and different amounts as they shall show by proper amendment before trial; for post-judgment interest at the applicable legal rate; for all court costs incurred in this litigation; and for such other and further relief at law and in equity, both general and special, to which Plaintiffs may show themselves entitled and to which this Court believes them deserving.

II.     **CLAIMS AGAINST ASM INDUSTRIES, INC.**

**JURY TRIAL REQUESTED**

**PARTIES**

47. The Plaintiff, Normand Dumais, Jr., is a resident of the City of Manchester, County of

    Hillsborough and State of New Hampshire.

48. The Plaintiff, Amanda Ames, is a resident of the City of Manchester, County of

    Hillsborough and State of New Hampshire.

49. The Defendant, ASM Industries, Inc. d/b/a Pacer Pumps ("ASM"), is a Pennsylvania

    corporation with a principal place of business at 41 Industrial Circle, Lancaster, PA

    17601 and is engaged in the manufacture of pumps for use in a variety of industries,

    which are sold in the State of New Hampshire to various wholesalers and retailers for

    redistribution and use by residents of New Hampshire.

**JURISDICTIONAL PREREQUISITES**

50. ASM markets and sells Pacer pumps, including the same type of pump as the Subject

    Pump, in stores throughout New Hampshire such that the exercise of jurisdiction in New

    Hampshire is reasonable.

51. The amount in controversy is in excess of $75,000.00.  The parties have complete

    diversity of citizenship.  This Court has jurisdiction pursuant to 28 U.S.C. §1332.

**FACTS COMMON TO ALL COUNTS**

52. Plaintiffs reallege each allegation above as if set forth herein.

53. While so engaged in the manufacture and sale of pumps, the Defendant placed a pump

    into the stream of commerce, which was subsequently used by the Plaintiff, Normand

    Dumais, Jr., while performing his work as a firefighter for the Pease Fire Department.

54. At all relevant times ASM knew or should have known and expected that the pumps which it manufactured would reach users in the condition in which they were sold.

55. On or about July 15, 2019, the Plaintiff, Normand Dumais, Jr., was using the ASM pump in the course of his employment as a firefighter for the Pease Fire Department which had been purchased for use by the Pease Fire Department in the State of New Hampshire.

56. On that same date while the Plaintiff was using the pump manufactured and sold by ASM, he sustained severe injuries when the pump failed and caused pressurized firefighting foam to strike his face while he was directly over the pump performing a routine operations check and causing him to ingest firefighting foam and suffer serious and permanent injuries.

57. At the time of the injury, the pump was in the same general condition as it was when it left the hands of ASM, and the Plaintiff's use of the product in no way altered the product from its intended condition.

58. At the time of the injury, the Plaintiff was using the pump for its intended and foreseeable use and was unaware of any danger to the Plaintiff as a result of using it.

## **COUNT III**

### **(Strict Liability against ASM)**

59. Plaintiffs reallege each allegation above as if set forth herein.

60. When Plaintiff sustained the injuries alleged in this Complaint the ASM pump was in a defective condition and unreasonably dangerous to a user or consumer in that the pump should not have failed during routine operations check.  The pump case should not have cracked under its own pressure.  The pump was made out of plastic and did not have an

internal bypass to relieve pump case pressure in case of being deadheaded.  The pump

case should not have been capable of creating pressure in excess of its rating.

61. The pump was also in a defective condition and unreasonably dangerous to a user or

consumer in that ASM failed to provide adequate warnings of the dangers associated with

the use of said product.  The pump lacked warnings about deadheading that could cause

the pump case to crack.

62. Each of the conditions set forth above were not observable by the Plaintiff and he relied

on ASM to deliver the pump in a condition fit for use for the purpose intended.

63. ASM breached its duty to deliver the pump to market in a condition fit for use for the

purposes intended.

64. The breach of that duty by ASM and the defective condition of the pump was the

proximate cause of the injuries sustained by the Plaintiff as set out below.

### COUNT IV

### (Negligence Against ASM – Design Defect)

65. Plaintiffs reallege each allegation above as if set forth herein.

66. At all relevant times ASM had a duty to design the pump in a manner to avoid or

minimize the extreme risks to users of the product.

67. The incident alleged above whereby the Plaintiff became injured was caused by ASM's

breach of said duty by failing to design the pump in an appropriate manner to avoid or

minimize the extreme risk to users of the product caused by failure of the product by

cracking or other means.

**COUNT V**

**(Negligence Against ASM – Manufacturing Defect)**

68. Plaintiffs reallege each allegation above as if set forth herein.

69. At all relevant times ASM had a duty to manufacture the pump in a manner to avoid or minimize the extreme risks to users of the product.

70. The incident alleged above whereby the Plaintiff became injured was caused by ASM's breach of said duty by failing to manufacture the pump in an appropriate manner to avoid or minimize the extreme risk to users of the product caused by failure of the product by cracking or other means.

**COUNT VI**

**(Negligence Against ASM – Failure to Warn)**

71. Plaintiffs reallege each allegation above as if set forth herein.

72. ASM had a duty to warn users of the dangers of the product.

73. ASM breached its duty to warn by failing to warn users of the dangers of deadheading that could cause the pump to crack and fail and cause serious injuries.

74. The negligence of ASM as alleged above was the proximate cause of the injury sustained by the Plaintiff and of the damages of the Plaintiff as alleged below.

**COUNT VII**

**(Breach of Implied Warranty of Fitness for a Particular Purpose Against ASM)**

75. Plaintiffs reallege each allegation above as if set forth herein.

76. At all relevant times ASM was a merchant who designed and manufactured the pump for use by others, such as the Plaintiff.

77. ASM impliedly warranted that the pump was fit for use for the purpose of the Pease Fire Department, that it was a safe and suitable instrument to be used in that manner and that the pump was fit and suitable for the use, in fact, made by ASM.

78. Plaintiff's use of the pump was foreseeable by ASM.

79. In using the pump, the Plaintiff relied on ASM's skill and judgment and the implied warranty of fitness for the purpose for which the pump was purchased.

80. The pump was not fit for use for its intended purpose and as a result of the ASM's breach of warranty of fitness of the pump, the Plaintiff sustained injuries alleged below.

81. On November 17, 2021, the Plaintiffs gave ASM written notice of the breach of warranty set out above and the injuries and damages sustained by the Plaintiffs as a result of the breach of warranty.  A copy of the notice is attached and incorporated by reference.

## COUNT VIII

### (Breach of Warranty of Merchantability Against ASM)

82. Plaintiffs reallege each allegation above as if set forth herein.

83. The Defendant impliedly warranted that the pump was of a merchantable quality, fit, safe, and in proper condition for ordinary use for which pumps are designed and used.

84. In reliance on that implied warranty of merchantability, the Plaintiff used it as intended on July 15, 2019.

85. Plaintiff's use of the pump was foreseeable by ASM.

86. However, ASM breached its implied warranty of merchantability because the pump was unfit and unsafe when used for ordinary purposes as a result of the defects alleged in this complaint.

87. As a direct and proximate result of ASM's breach of its implied warranty of merchantability, the defective pump failed while being used by the Plaintiff causing pressurized firefighting foam to hit Plaintiff directly in his face and causing him to ingest firefighting foam, which has caused serious and permanent injuries alleged below.

## COUNT IX

### (Loss of Consortium against ASM)

88. Plaintiffs reallege each allegation above as if set forth herein.

89. The Plaintiff, Amanda Ames, states that she is and at all times herein mentioned, was the lawful wife of Plaintiff, Normand Dumais, Jr.

90. As a direct, proximate, and foreseeable result of the Defendant's negligence, the Plaintiff, Amanda Ames, did suffer and continues to suffer the loss of services, society, companionship and consortium of the Plaintiff, Normand Dumais, Jr., which she enjoyed prior to the incident.

91. All to the damage of the Plaintiff, Amanda Ames, in an amount within the jurisdictional limits of this Court.

## DAMAGES

92. Plaintiffs reallege each allegation above as if set forth herein.

93. As a direct result of the breach of duty by the Defendant and the defective condition of the product as alleged in Count III through IX, the Plaintiff has sustained damages for medical expenses, lost wages, pain and suffering, permanent injury, loss of enjoyment of life, and lost future earnings.

94. Plaintiffs' damages exceed $75,000.00.

Dated at Manchester, New Hampshire this 5th day of April 2022.

Dated: 4/5/2022                              By:    */s/ Heather V. Menezes*

                                               Heather V. Menezes
NH BAR ID 17136
180 Bridge Street
Manchester, NH 03104
(603) 669-8080
hmenezes@shaheengordon.com

Lawrence Vogelman
NH BAR ID 10280
353 Central Ave. Suite 200
PO Box 977
Dover, NH 03821
(603) 749-5000
lvogelman@shaheengordon.com