# Exhibit C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **NORMAND DUMAIS, JR.,** *et al.***,** | ) | |
| | ) | |
| *Plaintiffs***,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No.: 1:22-cv-112-PB** |
| | ) | |
| **UNITED STATES OF AMERICA,** *et al.***,** | ) | |
| | ) | |
| *Defendants.* | ) | |
| —————————————————— | ) | |

**DECLARATION OF COURTNEY RORICK**
**IN SUPPORT OF UNITED STATES OF AMERICA'S MOTION TO DISMISS**

I, Courtney Rorick, hereby state and declare as follows:

1.      I am a Grants Officer Representative in the U.S. Property and Fiscal Office ("USPFO") of the New Hampshire Army and Air National Guard.  My position is Title 5 under the U.S. Code.  I have held this role since August 2021.  I serve as the USPFO's subject matter expert for all cooperative agreements.  In particular, I organize and oversee the full range of cooperative agreement management duties, from pre-negotiation of cooperative agreement requirements and reimbursements to final approval and through closeout.  I also develop and negotiate types of positions for reimbursement with applicable cooperative agreement program managers and others within the State's Department of Military Affairs.

2.      I am also a member of the New Hampshire Army National Guard.

3.      I hold a B.S. in Communications (June 2022) and an A.S. in Business Management (March 2022), both from Granite State College.

4.      I make this declaration in my official capacity, upon my personal knowledge and upon information that has been provided to me in the course of my official duties at the USPFO.

5.      Cooperative agreements are legal instruments reflecting assistance relationships between the United States government (National Guard Bureau) and the grantee recipients.  In this case, the grantee was the State of New Hampshire, Department of Military Affairs and Veterans Services.  The purpose of cooperative agreements is outlined in NGR 5-1, which is Attachment 1 to this Declaration.  NGR 5-1 is the regulation that governs cooperative agreements; the version in effect in 2019 was last revised in 2010.  For at least two decades, an Operations and Maintenance Master Cooperative Agreement ("MCA") has been in force between the United States, via the National Guard Bureau, and the State of New Hampshire.  The MCA was renewed multiple times, including in January 2019.  The MCA in effect in 2019 appended Appendix 24, regarding fire protection activities.  Attachments 2 and 3 to this Declaration are accurate copies of the MCA and Appendix 24 in effect in New Hampshire in 2019.

6.      Each MCA and appendix (sometimes referred to as a "program") will specify the authorized activities, charges, and percentages authorized for reimbursement under the scope of the particular agreement.  Salaries and certain benefits of state employees may be fully reimbursable by the United States under a cooperative agreement program only when the state employees' duties directly and completely support the National Guard's mission.  If state employees' duties support the National Guard's mission only in part, then the percentage of reimbursability will be commensurate with the degree of support.

7.      Relevant here, the MCA with New Hampshire provided that all workers' compensation premiums were reimbursable.  *See* Attachment 2 (MCA) § 304-A(2).  Under Appendix 24 to the MCA, firefighters' salaries were also reimbursable.  *See* Attachment 3 (App'x 24) §§ 2405, 2407(a)(6) (confirming that Appendix 24 was "intended to be 100%

federally reimbursed").  Taken together, these provisions in the MCA and Appendix 24 required the federal government to fully reimburse, among other things, the salary and workers' compensation premiums for Mr. Normand Dumais, Jr.

8.    To obtain reimbursement for activities under Appendix 24 to the MCA, the State of New Hampshire would submit a reimbursement request to the National Guard breaking down, on a per cost basis, what the State was asking the National Guard to reimburse them for.  That request for reimbursement would come directly to me.  I would then submit the request to the Program Manager for Appendix 24, who in New Hampshire is the Base Fire Chief.  (If the Base Fire Chief is unavailable, the request would be submitted to the Base Civil Engineer.)  After the Program Manager for Appendix 24 would validate that the information on the reimbursement request was correct and that the costs were reimbursable, I would ensure that the costs were within the scope of the agreement and that there were adequate funds.  After so confirming, I would send the reimbursement request to the Air National Guard Comptroller for signature, for transmission to the Defense Finance Accounting Service ("DFAS").  DFAS would then release the funds to the Department of the Treasury for the State of New Hampshire.

9.    As Grants Officer Representative for the USPFO, one of my duties is to serve as the records custodian for all cooperative agreements for the New Hampshire Army and Air National Guards.  In federal fiscal year 2019, the State of New Hampshire sent 16 requests for reimbursement of activities under Appendix 24.  In federal fiscal year 2019, the State of New Hampshire requested and was reimbursed for the salaries of firefighters.  The State did not seek reimbursement of workers' compensation premiums for federal fiscal year 2019.  If they had, the United States would have been contractually obligated to pay.

10.     As records custodian for the MCA with New Hampshire, I am further aware that Mr. Dumais was compensated on an hourly rate, as opposed to on a task-by-task basis.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.  Executed this 23rd day of February 2023.

Courtney Kerick
Grants Officer Representative
United States Property and Fiscal Office
New Hampshire Army and Air National Guard

4

# Attachment 1

**National Guard Regulation 5-1**

Management

# National Guard Grants and Cooperative Agreements

**National Guard Bureau**
**Arlington, VA  22202-3231**
**28 May 2010**

## UNCLASSIFIED

US_00006721

# *SUMMARY of CHANGE*

NGR 5-1
National Guard Grants and Cooperative Agreements
28 May 2010

This revision supersedes all previous editions of NGR 5-1.

US_00006722

National Guard Bureau                                                                              *NGR 5-1
Arlington, VA 22202-3231
28 May 2010

### Management

## National Guard Grants and Cooperative Agreements

### By Order of the Secretaries of the Army and the Air Force:

**CRAIG R. MCKINLEY**
General, USAF
Chief, National Guard Bureau

Official:

**JOHN D. SELMER**
Lt Col, USAF
Chief, Strategy and Policy Division

**History:** This publication supersedes all previous editions of NGR 5-1.

**Summary:** This regulation provides policy and procedural guidance to be followed in the administration and execution of cooperative agreements (CAs). It implements (DODGARS) 3210.6-R.

**Applicability:** This regulation applies to the Army National Guard (ARNG), the Air National Guard (ANG) and to all recipients of NGB Cooperative Agreements.

**Proponent and exception authority:** The proponent of this regulation is the National Guard Bureau, Office of Grants and Cooperative Agreements, NGB-PARC-A. The proponent has the authority to approve exceptions to this regulation that are consistent with controlling law and regulation. Any changes to this regulation must be authorized and published by NGB-PARC-A.

**Management Control Process:** This regulation is subject to the requirements of NGB Management and Internal Control Program directives. It contains internal control provisions but does not contain checklist for conducting internal control reviews.

**Supplementation:** Supplementation of this regulation will only be accomplished by the National Guard Bureau, Office of Grants and Cooperative Agreements, NGB-PARC-A.

**Suggested Improvements:** Users of this regulation are invited to send comments and suggested improvements on DA 2028 Recommended Changes to Publications and Blank Forms to the National Guard Bureau, ATTN: NGB-PARC-A, Jefferson Plaza #1, Suite 8300, 1411 Jefferson Davis Highway, Arlington VA 22202-3231.

**Distribution:**    F and X

**Contents** (Listed by paragraph number)

**Chapter 1**
**Introduction**
Purpose • 1-1
Proponent • 1-2
Publications, Abbreviations and Glossary • 1-3
Responsibilities • 1-4

**Chapter 2**
**Grants Officer's Representative**
General • 2-1

* This publication supersedes all previous editions of NGR 5-1.                                    i

Appointment Policy and Administrative Actions • 2-2
Duties and Responsibilities • 2-3
Limitations • 2-4

## Chapter 3
## Administration

General • 3-1
Completion and Term Cooperative Agreements • 3-2
Milestone Dates • 3-3
Completion and Execution of the O& M Master Cooperative Agreement • 3-4
Completion and Execution of the O&M Master Cooperative Agreement Appendices • 3-5
Funding O&M MCA Appendices • 3-6
Completion and Execution of a Military Construction Cooperative Agreement (MCCA) • 3-7
Funding an Military Construction Cooperative Agreement (MCCA) • 3-8
Creation of a New Agreement/Appendix under the O&M Master Cooperative Agreement • 3-9
Special Military Project Cooperative Agreements • 3-10
Modifying Cooperative Agreements • 3-11
Grantee Contracts • 3-12
Grantee Contract Flow Down • 3-13
Grantee Department Administration • 3-14
Cooperative Agreement Claims, Disputes and Appeals Procedures • 3-15
Records • 3-16

## Chapter 4
## Management Controls and Audits

General • 4-1
Management Controls • 4-2
Audits • 4-3

## Chapter 5
## Cost Principles for NGB Cooperative Agreements

General • 5-1
Costs of Cooperative Agreement Performance • 5-2
Allowable Costs • 5-3
Cost Sharing • 5-4
Centralized Personnel Plan (CPP) • 5-5
Grantee Responsibilities • 5-6

## Chapter 6
## Program Income

General • 6-1
Accounting for Program Income • 6-2
Waiver of User Fees • 6-3

## Chapter 7
## Reimbursement Costs

General • 7-1
Accounting for Direct Reimbursement Costs • 7-2
Waiver of Direct Reimbursement Costs 7-3

## Chapter 8
## Equipment and Supplies

General • 8-1
Equipment Use, Accountability and Disposition • 8-2
Supplies • 8-3
Use of Federally Owned Equipment by State Employees • 8-4

US_00006724

**Chapter 9**
**In- Kind Assistance**
General • 9-1
Transacting IKA • 9-2
Accounting for IKA • 9-3

**Chapter 10**
**Defense Assistance Awards Data System Reporting**
General • 10-1
Responsibilities • 10-2
Catalog of Federal Domestic Assistance Program Numbering System • 10-3
In-Kind Assistance, Program Income and State Share Reporting • 10-4
DAADS Report • 10-5

**Chapter 11**
**Finance**
General • 11-1
Obligation • 11-2
Standards of Financial Administration • 11-3
Payment Processing (ARNG and ANG) • 11-4
Advance Payment Method • 11-5
Accounting for Program Income • 11-6
Accounting for In-Kind Assistance • 11-7
Accounting for Direct Reimbursements through a MIPR • 11-8
Accounting for Rebates, Credits, Discounts and Refunds 11-9
Final Accounting and Settlement • 11-10
Records • 11-11


**Appendices**

**A.** References

**Figure List**

Figure 11-1: Sample Request for Advance Payment Approval
Figure 11-2: Sample Estimated Cash Flow Requirements Chart

Glossary

US_00006725

This page intentionally left blank.

US_00006726

## Chapter 1
## Introduction

### 1-1. Purpose

*a.* This regulation implements various Federal Public Laws (PL); Office of Management and Budget (OMB) Circulars; Code of Federal Regulations (CFR), and Department of Defense (DoD), Department of the Army (DA), Department of the Air Force (AF), National Guard (NG), Army National Guard (ARNG), and Air National Guard (ANG) regulations and directives governing cooperative agreements (CAs). It establishes policy and procedures for administering CAs between the United States Property and Fiscal Officer (grantor) and the State/Territory (grantee) and provides information on the use and limitations of available National Guard Bureau (NGB) resources.

*b.* NGB cooperative agreements are normally entered into by the National Guard Bureau with the States (grantees). CAs are funded thru Department of Defense appropriations provided to the NGB for Army and Air National Guard construction, minor construction, maintenance, repair or operation of facilities and mission operational support, and for other programs authorized by Congress or the DoD to be performed by grantees in support of the National Guard. Some agreements, (Military Construction cooperative agreements), Army Compatible Use Buffer {ACUB} and special military projects) are executed with State/local governments or non-profit agencies.

*c.* NGB CAs are legal instruments reflecting assistance relationships between the United States government (NGB) and grantee recipients. As a DoD component, NGB can award grants and enter into cooperative agreements based on the statutory authority of 31 United States Code (U.S.C.) chapters 61 and 65 and Section 21.20, DoD Instruction 3210.6R- Defense Grant and Cooperative Agreement Regulatory System (DoDGARS).

*d.* A cooperative agreement between NGB and a grantee is required when NGB transfers something of value, through funding or otherwise, to the grantee to support their ARNG or ANG and substantial involvement is expected between NGB and the grantee in carrying out the activity identified in the agreement. The DoD Grant and Agreement Regulations (DoDGARS) and this regulation apply in the execution of NGB Cooperative Agreements.

*e.* The use of a procurement contract (Federal contracting), not a cooperative agreement, is required when the principal purpose of the transaction is to acquire (by purchase, lease, or barter) property or services for the direct benefit or use of the United States. The Federal Acquisition Regulation (FAR), the Defense Federal Acquisition Regulation Supplement (DFARS), the Army Federal Acquisition Regulation Supplement (AFARS), and the National Guard Federal Acquisition Regulation Supplement (NGFARS) apply to procurement contracts.

*f.* This regulation is promulgated within the authority granted by DoDGARS 3210.6-R. Nothing in these supplemental regulations should be construed as conflicting with the superior authority set out in DoDGARS 3210.6-R.

### 1-2. References

Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1-3. Explanation of abbreviations and terms

Abbreviations and terms used in this regulation are explained in the glossary.

### 1-4. Responsibilities

*a.* Chief, National Guard Bureau (CNGB) is responsible to the Secretary of Defense and to Congress for the proper management and use of Federal funds. When appropriated Federal funds are distributed to the State/Territory through CAs, CNGB will normally assign this responsibility to the USPFO for the state.

*b.* National Guard Bureau Staff Judge Advocate (NGB-JA) is responsible for:

(1) Providing legal guidance, assistance and advice concerning CAs.

(2) Conducting legal reviews of CAs and their appendices, when requested.

*c.* NGB Office of Grants and Cooperative Agreements (NGB-PARC-A) is responsible for:

(1) Coordinating the staffing and updates to CAs and appendices.

(2) Monitoring the Defense Assistance Award Data System (DAADS) and providing NGB policy assistance for this report.

(3) Conducting policy reviews of CAs and appendices.

(4) Coordinating all aspects of CAs at the National Guard Bureau (NGB).

(5) Providing policy management and support to ensure that all NGB assistance programs comply with Federal public laws, executive orders, regulations and directives.

(6) Providing support, assistance, training and guidance to NGB and USPFO staffs.

1

(7)  Appointment of USPFOs as grant officers.

(8)  Serving as the proponent office for NGB sponsored CA training.

*d.*  The Adjutant General (grantee) is responsible for:

(1)  Compliance with all of the terms, conditions, and standards of the CA.

(2)  Supervising and managing all activities or projects within the scope of the CAs in accordance with sound business practices.

(3)  Providing the personnel, supplies, services and matching funds required by the CA.

(4)  Receiving funds, property and accounting for all expenditures and property acquired through an MCA/MCCA or Special Military Project, and making returns and reports concerning those expenditures and that property, as required.

*e.*  The United States Property and Fiscal Officer (grantor), as the grants officer, is responsible for:

(1)  Accounting for the proper obligation and expenditure of all Federal funds provided to the State/Territory through the CAs.  Making returns and reports concerning those funds and that property, as required by the Secretary concerned.  (32 U.S.C. Section 708).

(2)  Ensuring Federal funds are expended on authorized projects, activities or programs as set forth in the agreement or appendices.

(3)  Ensuring that adequate management and internal controls are in place to protect Federal interests.

(4)  Coordinating and conducting, in conjunction with the State Military Department, periodic State/Territory level CA training related to the administration and execution of the CA program.

(5)  Reviewing and approving/disapproving State requests for advance payments.

(6)  Granting extension of the CA beyond the required fiscal year close out date.

(7)  Appointing a grants officer Representative (GOR).

(8)  Appointing, on a DD 577, an ARNG CA Program Manager for each ARNG Appendix as the designated Federal employee to perform agreement duties outlined on the DD 577. (Sample ARNG appointment at the NGB-PARC-A Webpage).

(9)  Appointing, on a DD 577, an ANG CA Program Manager for each ANG Appendix as the designated Federal employee to perform day to day administrative duties outlined on the DD 577. This ANG appointment will exclude the funds certification authorization which rests solely with the Assistant USPFO Air (Fiscal). (Sample ANG appointment at the (NGB-PARC-A Webpage).

(10)  Making the final decision on all matters pertaining to Grants and cooperative agreements for their respective State.

*f.*  National Guard Bureau, Office of Primary Responsibility, Program Managers (NGB-OPR-PM) responsibilities:

(1)  It is NGB policy that all agreements and appendices, to include Special Military Project Agreements, will have an appointed NGB-OPR-PM.  NGB-OPR-PMs will be appointed, on a DD Form 577 by their respective Directors (06 level/or civilian equivalent minimum), to oversee and coordinate NGB level agreement/appendix activities.

(2)  Provide, to NGB-PARC-A, copies of their respective agreements and modification for review and approval.

(3)  Provide administrative and financial guidance to CA PMs as specified in the agreement.

(4)  Coordinating the allocation of Federal funding to states to support the approved agreements.

(5)  Compliance with NGB level management and internal controls program directives.

(6)  Completing specified NGB-PARC-A sponsored training related to cooperative agreement management and oversight.

*g.*  Special Military Project Agreements funded through specific DoD Appropriation or Special Authorization requires an NGB-OPR-PM.

*h.*  The Cooperative Agreement Program Manager (CA PM) at State/Territory level is responsible for:

(1)  Compliance with duties appointed by the USPFO (grantor) per DD Form 577.

(2)  Completing an NGB sponsored Cooperative Agreement Course within the first year of appointment as a CA PM.

(3)  Completing related CA training (i.e. Fiscal Law or Finance training) as directed by the TAG/USPFO.

US_00006728

## Chapter 2
## Grants Officer Representative (GOR)

### 2-1. General

The GOR is the individual appointed by the grants officer to perform day to day administrative actions and technical monitoring related to cooperative agreements for the State or Territory. The authority for appointment of a Grants Officer's Representative is based on DoDGARS 3210.6R, which authorizes Grant Officers and Agreement Officers wide latitude to exercise judgment in performing their responsibilities.

### 2-2. Appointment Policy and Administrative Actions

*a.* Individuals appointed as GORs must have the skills and training to coordinate CA policy and staff actions with CA PMs, NGB-OPR-PMs and grantee CA staff personnel. GOR appointees must be:

(1) A Federal employee. A grantee employee cannot be designated as a GOR.

(2) Appointed in writing by the grants officer.

*b.* The appointment shall clearly define the scope and limitations of the GOR's authority, to include:

(1) Specifying the extent and limitations of the GOR's authority to act on behalf of the grants officer.

(2) Indicating if he/she has the authority to work all agreements or specific agreements only.

(3) Stating that the appointment is not re-delegable.

(4) Specifying the appointment period covered (specific begin and end date or indefinite).

*c.* The GOR shall acknowledge the appointment in writing. A copy of the appointment will be distributed to all parties within the State/Territory concerned with CAs.

*d.* The appointment may be terminated at any time by the grants officer or his/her successor.

*e.* The termination of a GOR's appointment shall be in writing and shall State the effective date. All parties within the State/Territory concerned with CAs should be notified of the termination.

*f.* When a GOR's appointment authority is revoked before completion of the agreement, the GOR shall turn over the records to the successor GOR or as instructed by the grants officer.

*g.* Training for GOR's will, as a minimum, include completion of the cooperative agreements training course, the GOR training course and a fiscal law course. The GOR training course and fiscal law course shall be completed within the first year of appointment to the position. Fiscal law may be completed via a distant learning on line course.

### 2-3. Duties and Responsibilities

*a.* The GOR shall establish and maintain a file for each Master Cooperative Agreement (MCA) and each of its appendices, each Military Construction Cooperative Agreement (MCCA) and each Special Military Project Agreement approved for the state/territory.

(1) Establishing an MCA, MCCA and associated appendices and Special Military Project Agreements requires the GOR to:

*(a)* Complete the agreement using the format provided on the NGB-PARC-A website.

*(b)* Coordinate the staffing of or obtain required legal reviews.

*(c)* Ensure agreements have all required signatures.

*(d)* Distribute the agreement to all concerned parties.

(2) Each MCA file must, as a minimum, include:

*(a)* A copy of the grants officer's letter of designation.

*(b)* A copy of the GOR's appointment memorandum and any other documentation describing the GOR's duties and responsibilities.

*(c)* The original, executed MCA and all documentation supporting the MCA.

*(d)* Copies of modifications to the MCA, if applicable and all documentation supporting the modification.

*(e)* Documentation of all actions in support of the agreement.

(3) Each MCA Appendix file must, as a minimum, include:

*(a)* The original, executed agreement and all supporting documentation.

*(b)* Funding documents.

*(c)* Copies of modifications thereto.

*(d)* Documentation of all actions associated with the agreement.

(4) Each MCCA file must, as a minimum, include:

*(a)* The original, executed agreement with its Appendices and all supporting documentation.

*(b)* Funding documents.

*(c)* Copies of modifications thereto.

3

*(d)* Documentation of all actions in support of the agreement.

*(e)* Upon completion the final Project Inspection Report (NGB Form 593-R.)

*b.* The GOR should establish and maintain a current reference library containing the following publications as a minimum:

(1) NGR 5-1.

(2) Title 32 Code of Federal Regulations, Subtitle A, Chapter I, Subchapter C, Part 33 (DoD 3210.6R), hereinafter referred to as 32 CFR 33.

(3) Title 2 Code of Federal Regulations, Subtitle A, Chapter II, Part 225, hereinafter referred to as 2 CFR Part 225.

(4) DoDI 4000.19

*c.* GORs are responsible for the electronic reporting of assistance obligations/de-obligations through DAADS, DoD Assistance Award Action Report System IAW Chapter 10, NGR 5-1.

*d.* The GOR, upon receipt of a Grants and agreements Policy Letter (GCAPL) is responsible for its distribution and any action required.

*e.* Maintenance of records.

(1) Grant officers shall instruct GORs as to the type of records they are to maintain and distribution thereof.

(2) Records shall be numbered/labeled IAW AR 25-400-2**.**

(3) When a cooperative agreement is completed, the GOR shall forward all records pertaining to the agreement to the grants officer for retention.  The retention period for agreements is 6 years and 3 months after the final payment or settlement date.

## 2-4. Limitations

The GOR may be empowered, by the grants officer, to take any actions under a cooperative agreement which could lawfully be taken by the grants officer; except where the terms of the cooperative agreement itself specifically prohibit a GOR from exercising such authority.

*a.* The GOR does not have the authority and shall not be delegated authority to make any commitments or changes to the terms and conditions of a cooperative agreement.

*b.* The GOR shall not be authorized to award, agree or otherwise execute any cooperative agreement or modification thereto, or in any way obligate or certify funds on behalf of the Government.

## Chapter 3
## Administration

### 3-1. General

*a.* There are three categories of cooperative agreements: Operations and Maintenance Master Cooperative Agreements, Military Construction cooperative agreements and Special Military Project cooperative agreements.

(1) The Operations and Maintenance Master Cooperative Agreement (O&M MCA) consists of two parts, the first part of the MCA, includes standard terms and conditions applicable to all Appendices under the MCA. The second part of the MCA is comprised of the Appendices which contain specific terms and conditions applicable to the specific program, (e.g. ARNG Facilities Program, ANG Facilities Operations and Maintenance, Environmental Resource Management, and Physical Security). The performance period/termination date of each appendix shall be the same as the performance period/termination date of the MCA.

(2) Military Construction cooperative agreements (MCCA) both Army and Air consist of four parts. The first part is the main body of the agreement which includes standard terms and conditions applicable to the technical Appendices. The remaining three parts are technical Appendices which contain technical information for the specific project (i.e., scope, design and construction).

(3) Special Military Project cooperative agreements are specific, non-standard, unique agreements used to provide Federal domestic assistance to a State/District/Territory which cannot be executed under an existing agreement due to authority and/or funding.

*b.* The USPFO (grantor) and the TAG (grantee) shall have an approved and executed CA covering each program that the State Military Department operates and in which reimbursement is anticipated.

*c.* Legal reviews of all cooperative agreements by TAG (grantee) or other local government entity and USPFO (grantor) legal counsels are required.

(1) TAGs are encouraged to involve their Attorneys General early on in the execution process and to seek delegation of legal review to the lowest reasonable level.  The signature of the State Attorney General, or official designee (as delegated in writing), on the MCA shall satisfy the requirement of Article XI, Section 1102 of the MCA that the State furnish an opinion of counsel**.**

4

(2) The full-time Active Guard Reserve (AGR), or a federally recognized Staff Judge Advocate, shall be the legal counsel for the USPFO. If such Staff Judge Advocate is not available, NGB-JA shall assume this responsibility. The USPFO may also seek legal counsel from NGB-JA as required to avoid potential conflicts of interests with the Title 32 JAG.

d. The parties shall use the standard non-technical language in the agreement templates provided by NGB-PARC-A unless the agreement specifically authorizes the parties to use State/Territory unique language, to choose alternatives, or to accommodate unique State/Territory conditions.

e. The USPFO shall ensure that the grantee and CA PMs have a copy of the entire approved MCA or MCCA, including modifications and applicable Appendices.

f. The USPFO, in conjunction with the grantee, is encouraged to prepare a CA SOP and establish a CA Council to address CA related issues such as administration, local business processes, performance issues, policy development and interpretation and internal management control issues.

g. The use of digital forms, templates and signatures, when agreed to by the grantor and grantee, is authorized. Any document that is converted into digital format shall retain the same content, terms and conditions of the original format. A review for legal sufficiency will be completed by the grantor's legal counsel.

### 3-2. Completion and Term Cooperative Agreements

A Cooperative Agreement may take one of two basic forms: Completion or Term. Both forms must meet the bona fide need of the fiscal year in which they are awarded.

a. A completion Cooperative Agreement describes the activities in the form of a definite goal, target or product. This form of Cooperative Agreement normally requires completing and delivering a specified product, subject to availability of funds. NGB is required to fully fund completion form cooperative agreements, although NGB may elect to incrementally fund phased completion agreements. However, in the event the work or performance cannot be completed within the estimated cost, NGB may increase the estimated cost. Any increase in the estimated cost must be funded by appropriations that were in effect at the time the CA was executed. Work or performance using the completion form is by definition non-severable. The MCCA is a completion agreement.

b. A term cooperative agreement describes the scope of work or performance in general and obligates the grantee to perform specified activities within a stated period, typically the Federal fiscal year of the funding. Work or performance using the term form is by definition severable. The O&M MCA and Appendices are term agreements.

### 3-3. Milestone Dates

a. By 1 May of every year, NGB-OPR-PMs shall provide to NGB-PARC-A recommended changes to their respective agreements and supporting attachments.

b. By 1 June of each year, NGB-PARC-A shall publish (via a Grant and Cooperative Agreement Policy Letter (GCAPL)) and post to the GKO website any updated or revised agreements.

c. By 30 September of the year in which an O&M MCA expires, the USPFO, TAG, and their respective counsels, shall have executed the new O&M MCA and State appropriate appendices. The O&M MCA may be executed independently of the appendices. Final execution of all appendices will not be a cause to delay the use of the MCA.

### 3-4. Completion and Execution of the O&M Master Cooperative Agreement

a. The TAG and the USPFO are responsible for the execution of the MCA. The MCA is executed not later than 30 September. The TAG and the USPFO shall decide the performance period/termination date of the MCA. Five years is recommended, but the parties may agree to a lesser or greater term. The appendices executed under the MCA will have the same performance period/termination date as the MCA.

*Note:* The termination date is entered into Section 701 of the MCA.

b. Execution of the MCA requires the signature of the individuals and in the order as listed below:

(1) Legal counsels on behalf of the TAG and the USPFO;

(2) TAG, unless State legislation specifies otherwise;

(3) USPFO.

c. Execution of the MCA at the beginning of a new agreement cycle will take place before the commencement of the Federal fiscal year. Execution of the MCA is not dependent on the availability of funds. The MCA is not a funded document and the execution of an MCA is not an event which obligates Federal funds.

(1) The approved template issued by NGB-PARC-A shall be used in the preparation of the O&M MCA. (Ref. the NGB-PARC-A GKO Webpage)

(2) The GOR is responsible for the administrative preparation of the MCA and for distribution of the executed agreement.

5

US_00006731

*(a)* The numbering of the MCA shall be as prescribed by DoD 3210.6-R, DoDGARS, Section 21.560. The serial number for the MCA will be 1000.

*Note*: This number, including the fiscal year designation, will be valid for the term agreed upon in Section 701 of the MCA; the individual appendices under the MCA shall be numbered IAW with the FY they are established and that number, including the fiscal year designation, shall remain the same for the term established in Section 701 of the MCA.]

1. Enter the termination date in Section 701.

2. Identify Attachments/Appendices.

3. Complete signature blocks as indicated on the execution page.

4. Process for signatures and distribute executed agreement to all signatories and to each Directorate/CA PM responsible for a CA program at the grantee level.

(3) Review and approval by NGB-PARC-A is not required unless the terms and/or conditions of the MCA are modified.

### 3-5. Completion and Execution of O&M Master Cooperative Agreement Appendices

*a.* Execution of an MCA Appendix at the beginning of a performance period will take place before the commencement of the Federal fiscal year. Execution of an MCA Appendix is not dependent on funds being obligated at the same time. An MCA Appendix is typically a funded document; however it may be executed without funding with the annotation "Subject to the Availability of Funds." In such circumstances the appendix should reflect zero (0) Federal dollars obligated at that time. The Federal government cannot obligate appropriated funds in advance of an appropriation. If congressional action or NGB priorities dictate otherwise, the execution may occur anytime during the fiscal year and the initial funding period will be adjusted accordingly.

*b.* Execution of the MCA Appendices requires the signatures of the individuals and in the order as listed below:

(1) Legal counsels on behalf of the TAG and the USPFO.

(2) TAG, unless State legislation specifies otherwise.

(3) USPFO.

*c.* An appendix is initiated, at the beginning or during a fiscal year, through the USPFO by the Activity Program Director, (e.g. G3, G6, and/or the CA PM). Documentation required, as a minimum, will be an approved budget amount from the NGB-OPR-PM or state military command. The CA PM must identify a specific proposed budget amount. (Ref chapter 11)

(1) The approved templates issued by NGB-PARC-A shall be used in the preparation of the O&M MCA Appendices. (Ref. the NGB-PARC-A GKO Webpage)

(2) The GOR is responsible for the administrative preparation of the appendix and for distribution of the executed agreement to include:

*(a)* Numbering of the MCA Appendix as prescribed by DoD 3210.6-R, DoDGARS, Section 21.560. The serial numbers for the MCA Appendices will be in the 1000 series, the last digit(s) reflect the appendix number, (i.e. 1001 is ARNG Facility Programs, 1002 is ARNG Environmental etc).

*Note*: The individual Appendices under the MCA shall be numbered IAW the FY they are established and that number, including the fiscal year designation, shall remain the same for the term established in Section 701 of the MCA.

*(b)* Ensuring that all data blanks are filled as appropriate to the appendix.

*(c)* Completing signature blocks as indicated on the execution page.

*(d)* Processing for signatures and distributing executed Appendices to all signatories (as a minimum).

*d.* A NGB-OPR-PM signature is not required for the execution of an appendix.

*e.* Execution is complete when the grantee and the grantor sign. The grantor signs last.

*f.* Review and approval by NGB-PARC-A is not required unless the terms and/or conditions of the MCA Appendix are modified.

*g.* The GOR is responsible for furnishing a copy of the executed agreement to the NGB-OPR-PM.

*h.* If an appendix is initiated and executed other than at the beginning of a fiscal year, the MCA will be modified to include the new appendix.

*i.* If an appendix is terminated prior to the end of the performance period/termination date, it shall be removed from the MCA by means of an executed CA modification when closeout of the agreement has been completed.

US_00006732

### 3-6. Funding O&M MCA Appendices

*a.* O&M MCA Appendices are funded annually, either fully or incrementally. A CA modification, initiated by a written request with a certification of funds from the ARNG CA PM or Assistant USPFO Air (Fiscal) for ANG, shall be executed to establish the amount to be obligated against the CA.

(1) When CA funding authority (allotment) is issued to the USPFO and or the Asst USPFO Air (Fiscal) by NGB during the FY, the CA PM will forward the appropriate documentation to the GOR, as indicated above. The GOR shall use the CA Modification Form issued by NGB-PARC-A (Ref. the NGB-PARC-A GKO Webpage) to obligate the funds. The modification shall include at a minimum:

*(a)* The Annual Funding Program (AFP) amount which shall be the approved budget amount or the proposed budget amount;

*(b)* The dollars to be obligated as a result of the CA modification; and

*(c)* The total dollars obligated to date which reflect the Federal dollars obligated for the Federal government's share of the appendix.

*(d)* The State's share(s), if applicable.

*b.* The same process applies for de-obligation of funds from an agreement.

*c.* When CA funding authority (allotment) has not yet been issued to the USPFO and or the Asst USPFO Air (Fiscal) by NGB at the beginning of the FY, the CA PM can process, with the USFPO's concurrence, a request to administratively open the appendix for the FY. The GOR shall use the CA Modification Form issued by NGB-PARC-A (see the NGB-PARC-A Webpage) to administratively open the appendix for the FY. The modification shall include as a minimum:

(1) The Annual Funding Program (AFP) amount which shall be the approved budget amount or the proposed budge amount;

(2) Total Federal dollars amount obligated will be -0- ; and

(3) A statement to the effect of "This modification is subject to the availability of Federal FYXXXX Funds."

(4) The State's share(s), if applicable.

### 3-7. Completion and Execution of a Military Construction Cooperative Agreement (MCCA)

*a.* An ARNG MCCA is executed when a construction project has been approved through NGB-ARI. Execution may be accomplished prior to funds being issued; execution is not tied to the beginning of a fiscal year and may occur at any point during the fiscal year.

(1) Execution of the ARNG MCCA requires the signatures of the individuals and in the order as listed below:

*(a)* The grantee and grantor legal counsels.

*(b)* TAG, unless State legislation allows otherwise.

*(c)* USPFO.

*(d)* NGB-ARI.

(2) ARNG MCCAs contain three appendices, SP (Project Description, Scope, and Schedule), SD (State Design), and SC (State Construction). These appendices have data elements that are blank in the template; it typically is the responsibility of the requesting activity (Construction and Facilities Management Officer (CFMO) to complete these data elements and forward the completed appendix (ices) to the GOR for inclusion/attachment to the MCCA. An ARNG MCCA may be executed with appendix SP, SD and SC being initiated and funded separately.

(3) An ARNG MCCA is initiated through the USPFO by the Activity Program Director, typically the CFMO. Documentation required, as a minimum, will be the approved DD Form 1390-91 and any other project documents as provided by NGB-ARI.

*b.* An ANG MCCA is executed when a construction project has been approved through NGB/A7O; execution is not tied to the beginning of a fiscal year and may occur at any point during the fiscal year. Air National Guard MCCAs are usually with other local government entities such as an airport authority or port authority. Any agreement written to an entity other than the TAG must include a tripartite execution page. (Ref. the NGB-PARC-A GKO Webpage) The local government entity and the USPFO are the primary parties to the agreement and are referred to as grantee and grantor.

(1) Execution of the ANG MCCA requires the signatures (in order of appearance) of the:

*(a)* Legal Counsels on behalf of the grantee and grantor.

*(b)* Local Government grantee (dependent on project).

*(c)* Grantor.

*(d)* TAG, as third party to the agreement as applicable.

(2) ANG MCCAs contain three Appendices, State Design, State Construction and Utility Connection. These Appendices have data elements that are blank in the template; it typically is the responsibility of the requesting

7

US_00006733

activity (Base Civil Engineer (BCE) to complete these data elements and forward the completed appendix (ices) to the GOR for inclusion/attachment to the MCCA. An ANG MCCA may be executed with Appendix State Design, State Construction and Utility Connection being initiated and funded separately.

c. The approved templates issued by NGB-PARC-A shall be used in the preparation of the ANG and ARNG MCCAs. (Ref. the NGB-PARC-A GKO Webpage) The GOR is responsible for the administrative preparation of the MCCA and for distribution of the executed agreement to include:

(1) The numbering of the MCCA shall be as prescribed by DoD 3210.6-R, DoDGARS, Section 21.560. The serial numbers for ARNG MCCAs will be sequential starting with 2001 for the fiscal year in which they were executed. The serial numbers for ANG MCCAs will be sequential starting with 2101.

*Note:* The SD, SC and UC Appendices that are inclusive with the MCCAs are not numbered individually or separately from the MCCA. They retain the same number as the MCCA.

(2) Ensuring that all data blanks are filled as appropriate to the appendix.

(3) Completing signature blocks as indicated on the execution page.

(4) Processing for signatures and distributing executed agreements to all signatories (as a minimum).

d. Execution is complete when the grantee and grantor sign. The grantor signs last. However, in the case of ARNG MCCAs NGB-ARI signs last and the agreement is not validated until NGB-ARI signs.

e. Review and approval by NGB-PARC-A is not required unless the terms and/or conditions of the MCCA are modified.

f. The technical appendices may be modified, after execution; as a result of project requirements. If this occurs, there shall be a review and approval by the NGB-OPR-PM. Legal review will be at the discretion of the grantor and grantee. Review and approval by NGB-PARC-A is not required.

g. The GOR is responsible for furnishing a copy of the executed agreement to the NGB-OPR-PM.

## 3-8. Funding an MCCA

a. An MCCA is project specific and is a completion type agreement. NGB is required to fully fund completion form cooperative agreements. However it is appropriate and typical that each technical appendix of the MCCAs may be funded independently/separately as the project progresses. For example an ARNG MCCA may be funded in one fiscal year for the design and then funded in another fiscal year for the construction; each of these phases does not require separate MCCAs. Close coordination with the CFMO or BCE is required. A CA modification, initiated by a written request with a certification of funds from the CA PM or Assistant USPFO Air (Fiscal), shall be executed to establish the amount to be obligated against the CA.

b. When MCCA funding authority has been issued to the USPFO and or the Asst USPFO Air (Fiscal) by NGB and the CA PM has forwarded the appropriate documentation to the GOR, the GOR shall use the CA Modification Form issued by NGB-PARC-A (Ref. the NGB-PARC-A GKO Webpage). The modification shall include at a minimum:

(1) The appropriate project and appendix to be funded;

(2) The dollar amount to be obligated as a result of the CA modification; and

(3) The total dollar amount obligated to date which reflects the Federal dollars obligated for the Federal government's share of the appendix.

(4) The State's share(s), if applicable.

## 3-9. Creation of a new agreement/appendix under the O&M Master Cooperative Agreement

a. The creation of a new, non-existent, agreement/appendix under the O&M Master Cooperative Agreement will originate at the NGB-OPR-PM level. The NGB-OPR-PM shall submit a request for the new agreement to NGB-PARC-A indicating the statutory authority, proposed title, purpose of the agreement, anticipated budget amount and appropriation to be used for the agreement. NGB-PARC-A will coordinate with the NGB-OPR-PM on agreement template.

b. NGB-PARC-A is responsible for reviewing new, non-existent, agreements/appendices under the O&M Master Cooperative Agreement for policy compliance, formatting and numbering. NGB-PARC-A will also coordinate legal review and approval with NGB-JA and issue the agreement.

## 3-10. Special Military Projects Cooperative Agreements

a. A Special Military Project is a specific, non-standard/unique agreement used to provide Federal domestic assistance to a state/district/territory or other authorized local government entity or non-profit which cannot be executed under an existing MCA/Appendix. Special Military Projects require statutory authority, normally through a DoD Appropriations Act or a special appropriations authority and funded appropriations act.

8

*b.* NGB-PARC-A is responsible for reviewing Special Military Project Agreements for policy compliance, formatting and numbering. NGB-PARC-A will also coordinate legal review and approval with NGB-JA and issue the agreement.

*c.* The following actions must be completed by requestors (grant officers/CA PMs or NGB-OPR-PMs) in the processing of Special Military Project Agreements for execution:

(1) Identify the statutory authority/funded appropriations act for the project.

(2) Identify/Coordinate with the NGB-OPR-PM.

(3) Complete the Special Military Project template provided by NGB-PARC-A in its entirety and include all necessary attachments. No signatures are required at this point.

(4) Attach a cover letter from the grants officer or NGB-OPR-PM, as appropriate, summarizing the request to include the statutory authority, proposed title, purpose of the agreement, anticipated budget amount and appropriation(s) to be used for the agreement.

(5) Submit the Special Military Project request to NGB-PARC-A for review and staff coordination. Electronic or hard copy submissions will be accepted.

### 3-11. Modifying Cooperative Agreements

*a.* All cooperative agreement modifications are to be accomplished on the CA Modification Form issued by NGB-PARC-A (Ref. the NGB-PARC-A GKO Webpage). There are typically four purposes for issuing a CA modification; funding, terms and conditions, termination and other administrative.

*b.* Modifications to the funding of a CA. Requests for funding modifications are typically initiated by the CA PM and provided to the GOR for action. Requests for an increase should include at a minimum, any approvals required by the CA and a certification of funds availability. Requests for a decrease should include at a minimum, any approvals required by the CA. Modifications that obligate or de-obligate funds against a Cooperative Agreement shall be signed by the grantee and grantor. Modifications for funding do not require the review or approval of NGB-PARC-A.

(1) A CA modification shall be executed to obligate the initial funding of a Cooperative Agreement at the beginning of the FY whether it is fully funded or incrementally funded. Funds obligated against a Cooperative Agreement allow reimbursement to the grantee. A funding modification may also be issued "Subject to the Availability of Funds" at the beginning of a FY to allow the grantee to perform until certification of funds is received.

(2) A CA modification shall be executed to obligate additional funds for incremental allotments received during a FY.

(3) A CA modification shall be executed to obligate any increases to the original Annual Funding Program or, in the case of MCCAs, to the original project amount of the agreement. Each program specific CA provides guidance as to the level of involvement and the specific requirement(s) of the NGB-OPR-PM, (i.e. prior approvals and CA modification signature).

(4) A CA modification shall be executed to de-obligate funds against a Cooperative Agreement. Each program specific CA provides guidance as to the level of involvement and the specific requirement(s) of the NGB-OPR-PM, (i.e. prior approvals and CA modification signature).

*c.* Modifications to the terms and conditions of a CA. Requests to modify the terms and conditions established in a NGB-PARC-A CA template may originate at the grantee/grantor or NGB-OPR-PM level. Modifications to the established terms and conditions of a CA template at the grantee/grantor level may be necessary due to a particular State's laws and/or regulations. Modifications to the established terms and conditions of a CA template at the NGB-OPR-PM level may be necessary due to overall program change or statutory requirements. Modifications that change the terms and/or conditions of a CA shall be signed by the grantee and grantor. Requests for modification(s) to the terms and conditions of a CA at the grantee/grantor level shall be documented as to the circumstance and/or reason and forwarded by the grantor to NGB-PARC-A. NGB-PARC-A will coordinate the request with the NGB-OPR-PM and NGB-JA for their reviews and approvals and will notify the grantor of decision. However, modifying the fill in data initially completed at the grantee/grantor level does not require NGB-PARC-A or NGB-JA review; modifying the fill in data may require approval by the NGB-OPR-PM.

(1) Requests for modification(s) to the terms and conditions of a CA at the NGB-OPR-PM level shall be documented as to the circumstance and/or reason and forwarded by the NGB-OPR-PM to NGB-PARC-A. NGB-PARC-A will coordinate the review and approval of the request with NGB-JA and the NGB-OPR-PM. This type of modification will result in a Grants and Cooperative Agreement Policy Letter (GCAPL) being issued. The grantor has authority to execute a modification to the terms and conditions of an agreement resulting from a Grants and Cooperative Agreement Policy Letter (GCAPL). The GCAPL is the authority for this type of modification. The

9

NGB-OPR-PM, NGB-PARC-A and NGB-JA will have already reviewed and approved the changes resulting in the GCAPL.

(2) Requests for modifications to the technical Appendices of ARNG or ANG MCCAs (typically modifying the fill in data initially completed at the State level by the CFMO or BCE) after the MCCA has been executed shall include approval of the NGB-OPR-PM and the circumstances and/or reasons for the modification. The request will be forwarded by the CA PM to the grantor. The grantor is authorized to execute this type of modification. Modifications of this type do not require NGB-PARC-A or NGB-JA review and approval.

*d.* Modifications to Terminate a CA. Termination is not the same action as an FY closeout. Requests to terminate an executed CA may be necessary due to a particular State's laws and/or regulations, funding status or mission/program status. Modifications that terminate a CA shall be signed by the grantee and grantor.

*e.* Request for modification(s) to terminate a CA shall be documented as to the circumstances and/or reasons and forwarded by the CA PM to the grantor. Documentation should also include the status of funds and any other specific requirements within the agreement being terminated. Legal review and approval by both grantor and grantee counsels will be required prior to execution. Modifications for other administrative actions to a CA. Requests for modifications for other administrative actions may include providing a change in the Federal line of accounting and any other actions that do not include funds/funding or changes to the terms and or conditions of a CA. Requests for other administrative actions to a CA may be initiated by either the grantee or grantor and should be documented as to the circumstance and requirement of the action. Legal review will be at the discretion of the grantor and grantee. The grantor is authorized to execute this type of modification. Modifications of this type do not require NGB-PARC-A, NGB-OPR-PM or NGB-JA review and approval.

*f.* The GOR is responsible for furnishing a copy of all executed terms, conditions and funding modifications to the NGB-OPR-PM.

### 3-12. Grantee Contracts
Acquisition of goods and services by the grantee in performance of the CA shall be according to grantee contracting procedures IAW **32 CFR § 33.36**.

### 3-13. Grantee Contract Flow Down
The grantee is required to insert the substance of Article VIII of each MCA, MCCA or Special Military Project CA in all contracts issued under the CA, unless State/Territory laws or regulations offer more protection.

### 3-14. Grantee Department Administration
The grantee shall designate a member of his/her staff to administer each MCA, MCCA or Special Military Project CA.

### 3-15. Cooperative Agreement Claims, Disputes and Appeals Procedures
*a.* Policy: It is NGB policy to try to resolve all CA issues in controversy by mutual agreement at the grants officer level.

*b.* Statement of Relief Sought: No particular written format is required to make a claim or appeal under the CA. Claims shall be in writing, shall specify the nature and basis for relief requested, and shall include the document and other evidence pertinent to the claim. The TAG shall certify that the claim is made in good faith, and if funding is sought, the amount.

*c.* Time for Filing Claims: Claims shall be made within 60 days after the basis of the claim is known or should have been known, whichever is earlier. It is the grantee's responsibility to include in its claim all information needed to demonstrate its timeliness.

*d.* Grant officers' authority: grant officers, the designated agents for the Chief, National Guard Bureau, are authorized to decide or settle all claims arising from or relating to a CA subject to this regulation. This authorization does not extend to approving any regulatory or legally prohibited activity.

*e.* Grants officer's Decision:

(1) If a claim or dispute cannot be informally resolved, the TAG shall make a formal written Request for Decision to the grants officer. The grants officer shall make a written decision of the claim or dispute within 60 days of the receipt of the TAG's request.

(2) Where a formal decision is necessary, the grants officer shall:

*(a)* Prepare a written decision, which shall include the reasons for the decision, shall identify all relevant documents or other evidence on which the decision is based, and shall be documented in the Cooperative Agreement file.

10

*(b)* Notify the TAG of a specific date when he or she will render a written decision, if more time is required to do so. The notice shall inform the TAG of the reason for delaying the decision (e.g., a need for the TAG to provide additional information to support the claim).

(3) Unless appealed, the decision of the grants officer shall be final [see paragraph (g) below].

(4) If a formal decision is not rendered in the time specified above, the TAG can appeal directly to the grant appeal authority [see paragraph (g) below].

*f.* Alternative Dispute Resolution (ADR).

(1) Policy: NGB policy is to resolve all issues concerning cooperative agreements by mutual agreement at the grants officer level. Grant officers, therefore, are encouraged to use ADR procedures to the maximum extent practicable. ADR procedures are any voluntary means (e.g., settlement negotiations or mediation) used to resolve issues in dispute without resorting to formal administrative appeals [see paragraph (g) below] or to litigation.

(2) Procedures: If a TAG decides to appeal a grants officer's decision, the grants officer shall encourage the TAG to enter into ADR procedures with the grants officer. The ADR procedures or techniques to be used either may be agreed upon in advance as part of the Cooperative Agreement instrument or may be agreed to at the time that the parties determine to employ ADR procedures. ADR procedures may be used before submission of the TAGs appeal [see paragraph (e) above].

*g.* Appeals:

(1) Grant appeal authority: The CNGB shall establish one or more grant appeal Authorities to decide formal, administrative appeals. The individual so designated shall be at least at a grade level in the Senior Executive Service, if civilian, or at the rank of General Officer, if military. The appointment letter shall be signed by the CNGB.

(2) Right of Appeal: The grantee has the right to appeal a grants officer's decision to the grant appeal authority.

(3) Appeal Procedures.

*(a)* Notice of appeal: The TAG may appeal a decision of the grants officer within 90 days of receiving that decision, by filing a written notice of appeal to the Grant appeal authority and to the grants officer.

*(b)* Appeal file: Within 30 days of receiving the notice of appeal, the grants officer shall forward to NGB-PARC-A and the TAG's appeal file, which shall include copies of all documents relevant to the appeal. The appellant may supplement the file with additional documents it deems relevant. Either the grants officer or the State may supplement the file with a memorandum in support of its position. NGB-PARC-A will contact the office CNGB to request appointment of the grants and appeal authority. The grant appeal authority may request additional information from either the grants officer or the TAG.

*(c)* Decision: The appeal shall be decided on the written record unless the grant appeal authority decides to conduct fact-finding procedures or an oral hearing on the appeal. Any fact finding or hearing shall be conducted using procedures that the grant appeal authority deems appropriate.

*h.* Representation: The TAG may be represented by counsel or any other designated representative in any claim, appeal, or ADR proceedings brought pursuant to this chapter, as long as the representative is not otherwise prohibited by law or regulation from appearing before the National Guard Bureau. Nothing in this chapter is intended to limit a TAG's right to any remedy under the law.

### 3-16. Records

*a.* The grantee, the USPFO and the Assistant USPFO for Air (Fiscal) shall make records and accounts pertaining to the CA available for inspection by auditors and other authorized Government officials as required.

*b.* All financial and programmatic records, supporting documents, statistical records, and other records of the grantee which are pertinent to the CA, shall be retained for six years and three months from the ending date of the CA. If any litigation, claim, negotiation, audit or other action involving the records is started before the expiration of the six years and three months, the records must be retained until completion of the action and resolution of all issues or until the end of the regular six years and three months, whichever is later.

US_00006737

Case 1:22-cv-00112-PB   Document 29-4   Filed 02/28/23   Page 24 of 79

### Chapter 4
### Management Controls and Audits

#### 4-1. General
All CA PMs, NGB-OPR-PMs and grant officers involved with CAs shall ensure that the provisions of the **Federal Managers Financial Integrity Act of 1982; OMB Circular A-123 - Management's Responsibility for Internal Control; DoD Directive 7600.10**, and respective Service regulations are complied with. Financial Program Managers responsible for the execution and administration of CAs shall also be held accountable for understanding and applying the Comptroller General, **General Accountability Office (GAO) Standards**, in accomplishing day-to-day responsibilities.

#### 4-2. Management Controls
*a.* The execution, administration, and closeout procedures of CAs shall be considered highly vulnerable to fraud, waste, and mismanagement. Cooperative Agreement management control program evaluations shall be included in the ARNG 5 Year Management Control Plan, the ANG 5 Year Management Control Plan and NGB level management control plans. Plans will be evaluated in accordance with risks determined and assigned by the respective commands. NGB-OPR-OMs and CA PMs responsible for the execution and administration of CAs at the State/Territory and NGB level shall comply with NGB Management Controls Program/Internal Control Program requirements. Compliance will be included in official performance ratings/evaluations. As a minimum, consideration will be given to the following risk factors in assessing CA controls:

(1) Administration. Ensure that administrative requirements of this regulation, Agreements, Appendices and other Federal Grants and Cooperative Agreement directives are followed.

(2) Funding. Ensure that all required budget and funding regulations and agreement/appendix funding directives are followed.

(3) Historical Problems. Ensure issues, problems and trends affecting Agreement and appendix execution are addressed and corrected.

(4) Internal Controls. Ensure that effective Agreement and appendix operational controls are in place.

(5) Nature of the Federal Support. Ensure that CA Program assistance is provided and executed in accordance with the specified agreement/appendix authority to prevent purpose violations.

(6) Results of Management Control Reviews and Audits. Ensure that identified risks or material weaknesses are followed up on.

*b.* The grants officer is responsible for ensuring that adequate Cooperative Agreement management controls are in place to protect the Federal government's interests in their State/Territories.

(1) The USPFO and the TAG shall be responsible for the performance of risk assessments on each separate CA and MCA Appendix. The USPFO Internal Review capabilities can assist in this responsibility.

(2) Each separate CA and each appendix of the MCA shall be identified separately in the USPFO Internal Review/Assessable Entity File. The risks assigned to each separate CA and each appendix of the MCA should be the same as that developed in the Command's Internal Management Control Plans. For the ANG, risk assessments of assessable units will be coordinated with unit commanders for validation.

(3) The Internal Review Supervisory Auditor shall ensure that CAs are given proper consideration when recommending annual internal review schedules.

(4) Weaknesses in management controls, which have the potential for impacting Federal reimbursements, shall be immediately reported, in writing, to the USPFO, the Assessable Unit Manager (AUM) or Internal Control Administrator (ICA). Such reports shall include a discussion of corrective actions taken with milestone dates identifying when corrective actions shall be completed.

*c.* NGB-J Staff and ARNG/ANG Directors/Divisions who appoint CA OPR-PMs shall ensure that management control risk assessments, related to their specific Agreement or Appendices, are included in their Directorate or Division Management Control or Internal Control Programs.

*d.* A Sample Management Control Checklists for State CA PMs and NGB OPR-PMs can be found the Templates-Formats-Tools section at the NGB-PARC-A GKO Webpage.

#### 4-3. Audits
*a.* The grantee is responsible for obtaining an audit in accordance with **the Single Audit Act of 1984** (**31 U.S.C. 7501-7**) and **OMB Circular A-133**, Audits of States, Local Government and Non-Profit Organizations. The audit shall be made by an independent auditor in accordance with generally accepted government audit standards covering financial and/or financial compliance audits. An independent auditor is defined as (1) a State or local government

US_00006738

auditor who meets the independence standards specified in generally accepted government audits standards; or (2) a public accountant who meets such independence standards. The frequency of audits conducted on CA Program operations, in accordance with the Single Audit Act of 1984, will be determined based on risks by the State. The cost of the single audit is to be shared by the grantee and the Federal government, in the same proportion that Federal financial assistance bears to the recipient's total expenditures for the fiscal year covered by the audit.

b. In addition to the above required audit the TAG or USPFO may request additional audits or reviews as necessary. Such audits/reviews can be conducted by USPFO-IR Staff, by a public accountant firm or requested through NGB-IR. These additional audit/review agencies do not have independent inspection authority and cannot be substituted for the requirement in paragraph 4-3a.

c. As a minimum, an audit or review (full or partial) will be conducted by the USPFO every three years on each Agreement and appendix.

d. The costs of audits made according to OMB Circular A-133 may be allowable charges under the CA providing the criteria in paragraphs 5-3a of this regulation and Title 2 CFR Part 225, Cost Principles for State, Local and Indian Tribal Governments are met. Audit costs shall not be paid if there is no direct benefit received by the CA. Audit costs will not be included as part of the Centralized Personnel Plan costs. To be reimbursable to the grantee, the audit must be classified and equitably charged as a direct cost under the grantee's accounting systems. If the cost of the single audit is accounted for by the grantee as indirect cost, such costs are unallowable. No cost may be charged to Federal assistance programs for audits required by the Single Audit Act that are not made in accordance with OMB Circular A-133. The Federal government's share of the audit costs will be reimbursed from existing funds allocated to the specific appendix benefiting from the audit. Therefore, the Federal government's share of the CA funding will not be increased due to audit costs.

## Chapter 5
## Cost Principles for NGB Cooperative Agreements

### 5-1. General
CA Program Managers (PMs) and grant officers shall ensure that the provisions of the principles for determining costs applicable to grants and contracts with State, local, and federally recognized Indian Tribal Governments, 2 CFR Part II and 32 CFR Part 33 the provisions of this chapter, and the terms and conditions of a CA are complied with in regard to the request for reimbursement and payment of costs in NGB CAs.

### 5-2. Costs of Cooperative Agreement Performance
The Allowable costs incurred by the SMD in performance of a CA shall be determined according to the provisions of paragraph 5-3 below, Title 2 CFR Part 225, Cost Principles for State, Local and Indian Tribal Governments and 32 CFR Part 33 current at the time the cost is incurred. Costs must meet the following three criteria: 1) must be allocable, 2) allowable and 3) reasonable.

### 5-3. Allowable Costs
a. Direct Costs: Any costs identified directly with the performance of a CA must meet the following cost reimbursement rules:

(1) Allocable Costs: Costs must actually have been incurred by the grantee and be allocable to the CA supported program, project or facility. This means the CA received a direct benefit from the activity causing the charge; there is a causal relationship between the activity causing the charge and the Federal program (i.e., the cost effect of the additional burden caused by the CA is measurable); and the cost would disappear without the existence of the CA.

(2) Allowable Costs: Costs must conform to Federal, DoD, Army, AF and NG policies concerning the use and management of Federal funds and may not be contrary to any restriction, limitation, or instruction contained in any approved budget.

(3) Reasonable Costs: Costs must not exceed that which would be incurred by a prudent person under the circumstances prevailing at the time the decision was made to incur the costs. The reimbursement of salaries and benefits costs for employee positions shall not exceed the salary and benefits costs for a similar State government position or for a comparable grade and series Federal Civil Service position for the geographic area in which the employee works.

(4) Availability of Funds: Costs cannot be reimbursed unless sufficient funds have been obligated to the CA.

US_00006739

*b.* Indirect Costs: Indirect costs are those costs incurred for a common or joint purpose benefiting more than one cost objective, and not readily assignable to the cost objectives specifically benefited. Indirect costs, as defined in 2 CFR, Part II, 225, are unallowable.

(1) Except for the NGB Youth Program fringe benefits, Congress has not authorized NGB to reimburse indirect costs.

(2) When a cost cannot be easily classified as either a direct or indirect cost, the State's treatment of that cost, as reflected in its Central Services Cost Allocation Plan (CSCAP) or in its approved indirect cost rate proposal, shall apply. The CSCAP is prepared by the State in accordance with appendix C, 2 CFR Part 225 and approved by the Department of Health and Human Services. The CSCAP is prepared to identify all central service costs statewide. A cost treated as indirect by the grantee for any other Federal grant or cooperative agreement may not be treated as direct for NGB cooperative agreements. That is, the grantee may not request reimbursement under a CA or MCA Appendix for any item included in its indirect cost rate or not included as a direct cost in the billed central services section of its CSCAP.

*c.* Fringe Benefits. Fringe Benefits for which the State/Territory does not bill the State Military Department directly, such as workman's compensation, unemployment compensation, State/Territory sponsored life and health insurance, and retirement benefits are allowable if they are part of the State's Central Service Cost Allocation Plan approved by the Department of Health and Human Services. The TAG shall provide the USPFO a copy of such plan.

*Note:* The USPFO does not need a copy of this plan if the State/Territory bills fringe benefits directly to the State Military Department. However, for these costs to be reimbursable, all of the following conditions have to be met:

(1) The individual cost items have to be reimbursable under the terms of individual appendices.

(2) Fringe benefit costs for which the State/Territory does not bill the State Military Department directly shall be reimbursed by applying a fringe benefit rate to the costs of actual salaries paid to employees. The grantee must submit to the USPFO, prior to requesting reimbursement, a fringe benefit rate proposal. This fringe benefit rate is determined by dividing the total allowable direct wage base for the military department into the total fringe benefit costs for the military department for those benefits for which the State/Territory does not bill the State Military Department directly. The fringe benefit costs determined from the billed central services section of the State's approved Central Services Cost Allocation Plan. Adjustments based on actual cost experience for the fiscal year will be carried forward and made part of the rate negotiation in the next fiscal year. The rates must reflect the way the State actually bills the State Military Department (e.g. per capita, percent of payroll) and must be clearly applicable to individual appendices.

(3) Fringe benefits, which are neither direct costs nor included in the billed central services section of the State's Central Service Cost Allocation Plan approved by Health and Human Services, are not reimbursable.

*d.* When a cost can be classified as either  a direct or indirect cost, the State's (grantee) treatment of the cost, as reflected in its Central Services Cost Allocation Plan (CSCAP) or a State's approved indirect cost rate negotiated in accordance with Appendix E, 2 CFR, Part 225, shall apply. The CSCAP is prepared by the State (grantee) in accordance with Appendix C, 2 CFR Part 225, and approved by the Department of Health and Human Services; the CSCAP is prepared to identify all central service costs statewide. The State may not request reimbursement under a CA or MCA Appendix for any item included in its indirect cost rate or not included as a direct cost in the billed central services section of its CSCAP.

## 5-4. Cost Sharing

*a.* Wherever there is an identified cost share in an agreement the grantor shall reimburse the grantee only for the grantor's percentage share of the total allowable costs.

*b.* Whenever the USPFO provides In-Kind Assistance (IKA), the grantee is not relieved of responsibility to meet the match or share requirements specified in the appropriate Agreement. The agreement shall indicate how the grantee's match or share will be recovered.

*Note:* Letters of Credit are not authorized.  Program income shall not be substituted for required State/Territory contributions. Although program income is listed in the DAADS report as a State/Territory contribution, it is in addition to any required State contribution.

## 5-5. Centralized Personnel Plan (CPP)

*a.* The CPP is the mechanism which allows reimbursement to the grantee should the grantee choose to centralize CA personnel within the State Military Department. The Human Resource Office, Procurement Office, and Accounting Office, are the three areas where personnel cost can be authorized and paid to support a CPP. Supervisory time shall

US_00006740

not be calculated in the CPP; however, a supervisor, whose time can be validated and allocated to the performance of non-supervisory functions in the cooperative agreement program, *may* be considered in CPP calculations.

*b.* The CPP is negotiated annually between the grantee and the USPFO and approved by the USPFO. The USPFO has the responsibility to review and validate all costs charged to Agreements for reimbursement. Therefore, the CPP shall reflect only those actual, direct personnel costs incurred. Furthermore, the CPP shall include a methodology that accurately captures the separate cost drivers and metrics for each allowable personnel functional area. The two most commonly used NGB methodologies to formulate CPP costs drivers are the Time Study of Personnel method and the fee per action method.

*c.* All reimbursements requested under a CPP must be for incremental, direct, and personnel costs that are compensation for staff positions that would not exist if CAs did not exist. Only non-supervisory compensation costs in the personnel, procurement, and accounting functional areas are allocable. No other costs (i.e. audit costs) are authorized. All reimbursements requested must be allocated to specific appendices. Furthermore, amounts requested for each appendix must be based upon the actual level of effort developed to that Appendix, and the personnel must be directly responsible for actions supporting the appendix.

### 5-6. Grantee Responsibilities

It is the grantee's responsibility to properly account for costs incurred under a CA and ensure that the cost principles referred to in this chapter are followed. The grantee may not charge costs incurred in support of non-Federal activities or agreements to Federal CAs. The grantee shall take particular care to ensure that it does not charge costs incurred in performance of one CA to another, or to both. Where there is more than one CA funded activity, the grantee must ensure that it properly allocates cost among the various CAs.

### Chapter 6
### Program Income

### 6-1. General

*a.* Program income means the gross income received by the grantee directly generated by a Cooperative Agreement supported activity. Program income is received by the grantee from non-Federal, Non-DoD Agencies/Activities. Program income includes fees for services performed or from the use or rental of real or personal property acquired with Cooperative Agreement funds.

*b.* State/Local and Private Entity Users of Real Property will be charged for cost to run the facility, including direct, indirect and general administrative costs.

*c.* Exception: Reimbursement received by the grantee from the use or rental of State owned, federally supported readiness centers is not program income IAW Title 10 USC,§ 18236(c). 10 USC § 18236(c) permits grantees to rent out readiness centers providing the grantee uses the income received from such rentals to support maintenance of the readiness centers. In addition, as a condition for continued Federal support, the grantee must increase its contribution to the agreement by at least the amount of all identifiable incremental costs (IIC), for which it receives Federal support (e.g. utilities). IIC are those costs a base or installation incurs that are directly related to usage by users being supported that the base or installation would not otherwise incur. Examples include, rental, placement and pickup of dumpsters and portable latrines; additional refuse pickups, grass mowing and insect spraying; utilities for metered buildings, cost of consumables, like targets; training area cleanup and damage repair; and employee overtime as a result of the use of the base or installation or building. National Guard units may be charged IIC for additional services.

*d.* Funds received by the grantor from other Federal agencies, including DoD components, are not considered program income but are considered to be direct reimbursement for costs incurred in support of the using agency. [See chapter 7, Direct Reimbursable Costs]

*e.* Rebates, credits, discounts and refunds, and interest earned on any of these, is not program income. (See chapter 11, paragraph 11-9)

*f.* Any State entity supported by Federal funding under a CA (e.g. Youth Programs) shall be considered a Federal user.

### 6-2. Accounting for Program Income

*a.* Program income shall be added to the funds committed to a CA as provided in 32 CFR 33.25(g) (2). The addition of program income to the funds committed in a CA will not require an increase in the Federal funding contribution. Program income may not be used to provide any required State match.

15

US_00006741

*b.* Accounting for program income will be as prescribed in paragraph 10-4 and paragraph 11-6 of this regulation.

### 6-3. Waiver of User Fees.

*a.* Any user fees generated by non-Federal, non- DoD users, which would normally be considered Program Income, may be waived by the grantor when the grantor has determined the administrative cost in collecting those fees would exceed the amount of earned Program Income. (DoDGARS 3210.6R Part 21 Subpart D, §21.465) The grantor will, for each fee waived, include a cost benefit analysis and findings in the cooperative agreement files.

*b.* The grantee may request (for facilities other than readiness centers/armories) a waiver of fees listed in paragraph 6-1 b for community based, non-profit organizations up to an aggregate total of $8000 per fiscal year. (The $8000 aggregate is the total waivered sum from all organizations; each individual agency does not get up to $8000 per fiscal year). The grantee's waiver request must be supported by a written justification explaining that the administrative cost of collecting the user fee is greater than the amount of the user fee. This justification must be provided with the waiver request to the grantor. For audit purposes, the grantee shall maintain the necessary documentation that validates each approved waiver. The grantor will track the total costs waivered to ensure the $8000 management control cap is not exceeded.

### Chapter 7
### Direct Reimbursement for Costs

### 7-1. General

*b.* Direct reimbursement for costs means the reimbursement received from other Federal agencies for the use of a NGB supported facility. The grantor will collect reimbursement for IIC from tenant activities, non-ARNG transient users, and other incidental Federal agency users through a properly negotiated Memorandum of Understanding (MOU), Memorandum of Agreement (MOA) or Interservice, Intraservice or Intragovernmental Agreement.

*c.* A federal agency can enter into an interservice, intraservice or intragovernmental support agreement (ISA) with the grantor in accordance with 5-2. Cost issues and reimbursement details surrounding the use of the facilities are to be enumerated in the ISA.

*d.* A copy of the ISA will be filed with the appropriate Cooperative Agreement for audit trail purposes.

*e.* The grantor will collect direct reimbursement costs through Federal methods (i.e. inter-fund transfers or MIPRs) and add those funds to the total dollars obligated for the appropriate CA. Those funds will then be available for reimbursement to the grantee.

*f.* DoD Instruction 4000.19, Inter-service and Intergovernmental Support; The Army Reimbursable Policy, Air Force Instruction (AFI) 25-201, Support Agreement Procedures; and other applicable NGB policies and procedures will be used in formulating authorized charges. MOAs/MOUs will be prepared in accordance with NGR 5-2.

*g.* ARNG units, ARNG tenants, ARNG transient users and resident training detachments will not be charged for services provided unless the user requests a level of service that exceeds the day-to-day base or installation service i.e. additional rented portable latrines.

### 7-2. Accounting for Direct Reimbursement Costs
Accounting for Direct reimbursement for costs will be as prescribed in chapter 11 of this regulation.

### 7-3. Waiver or User Fees

*b.* Direct reimbursement costs generated from Federal users may be waived by the grantor when the grantor determines that the administrative cost in collecting such cost would exceed the amount of the earned reimbursement. The grantor will, for each charge waived, include a cost benefit analysis and findings in the cooperative agreement file.

*c.* Waiver of direct reimbursement costs can only be approved or authorized by the USPFO (grantor).

### Chapter 8
### Equipment and Supplies

### 8-1. General

*a.* 32 CFR 33.32 and Appendix B, Section II of this regulation, define equipment as tangible, nonexpendable, personal property (excluding military supplies) having a useful life of more than one year and an acquisition cost of

16

$5,000 or more per unit. Supplies are defined as any items purchased for the performance of an MCA that are not "military supplies or equipment."

*b.* Ownership of equipment and supplies acquired under a National Guard Cooperative Agreement is governed by 32 CFR Part 33, unless prohibited by local law; grantee will manage personal property and supplies in accordance with the rules contained in this chapter.

## 8-2. Equipment Use, Accountability and Disposition

*a.* Equipment purchased through the Federal Procurement System as In Kind Assistance for the support of Agreements will be used and accounted for as follows:

(1) Title will be vested with the Federal government (grantor).

(2) There must be a Table of Distribution and Allowance (TDA) authority for the USPFO (grantor) to authorize the purchase and account for the equipment as Federal property.

(3) The equipment will be considered federal owned equipment.

(4) The equipment will be managed by grantee recipients in accordance with NGB, ARNG and ANG service specific directives. (AR 735-5 Chap 2 Policy and Procedures for ARNG Supply Accountability and AFMAN 23-110, Vol 2, Chap 22 USAF Supply Manual) for ANG supply accountability).

*b.* Equipment purchased by the grantee for the support of Agreements will be managed, used and disposed of as follows:

(1) Title will be vested with the grantee.

(2) The equipment will be used in the program for which it was acquired.

(3) When purchasing/acquiring replacement equipment, the grantee may use the equipment being replaced as a trade-in or sell the equipment and use the proceeds to offset the cost of the replacement equipment, subject to the approval of the grantor.

*c.* Grantee purchased equipment, unless otherwise prohibited by State law, will be accounted for as follows:

(1) Equipment property records will be maintained, and reported to the USPFO. Reports will include a description of the property, a serial number or other identification number, the source of property, who holds title, the acquisition date, and cost of the property, percentage of Federal participation in the cost of the property, the location, use and condition of the property, and any ultimate disposition data including the date of disposal and sale price of the property.

(2) A physical inventory of the property will be taken and the results reconciled with the previous grantee property records reported to the grantor.

(3) A control system must be developed by grantee recipients to ensure adequate safeguards to prevent loss, damage, or theft of the property. Any loss, damage, or theft shall be investigated and reported.

(4) Adequate maintenance procedures must be developed by grantee recipients to keep the property in good condition.

*d.* Local Government entities (i.e. State political subdivisions, counties, municipalities, cities, towns, townships, local public authorities, airport authorities or school districts) will use and manage equipment in accordance with paragraphs c and d of this section. ( 32 CFR 33.32 Equipment)

(1) Disposition. When original or replacement equipment is no longer needed for the Cooperative Agreement, the first priority will be to move the equipment to another federally supported Cooperative Agreement. Otherwise disposition of the equipment will be as follows:

(2) Items of equipment with a current per-unit fair market value of less than $5,000 may be retained, sold or otherwise disposed of with no further obligation to NGB.

(3) Items of equipment with a current per unit fair market value in excess of $5,000 may be retained or sold and NGB shall have a right to an amount calculated by multiplying the current market value or *proceeds* from sale by NGB's share of the equipment.

*e.* Grantees or sub-grantee contractors may not use equipment acquired with NGB CA funds to provide services, for a fee, which would result in unfair competition with private companies providing equivalent services, unless specifically permitted to do so by Federal statute (OMB Circular A-102).

## 8-3. Supplies

*a.* Title to supplies acquired under a Cooperative Agreement vest, upon acquisition, with the recipient (grantee or sub-grantee). (Ref. 32 CFR 33.35)

*b.* If there is a residual inventory of unused supplies exceeding $5,000 in total aggregate fair market value upon termination or completion of the CA, and if the supplies are not needed for any other federally sponsored programs or projects, the recipient shall compensate NGB's share.

*Note:* This paragraph applies only if title (to supplies) is vested in the State (grantee).

17

**8-4. Use of Federally Owned Equipment by State Employees**

   *a.* State government employees, with the concurrence of the TAG, are authorized to operate Federal government owned/leased equipment (e.g. military equipment, GSA vehicles) while performing official duties in support of cooperative agreements. State employees, as with Federal employees, shall be properly trained, qualified and licensed to operate the equipment in accordance with TAG, ARNG and ANG directives and State and local laws.

   *b.* The grantee may ensure against the cost of repair on or loss of federal owned/leased equipment used by State employees when such insurance is required by State law or is part of consistent agency practice to cover costs considered as negligent which damages would otherwise not be covered by the Federal agency.

   *c.* The grantee must agree to reimburse the US Government for any loss or damage to Federal owned/leased equipment (e.g. GSA vehicle) as a result of operation by a State employee. Nothing in the Agreements or Appendices shall be construed as an indemnification by the United States, of the State, its employees, agents, or third persons, for liability with respect to any and all claims, including, but not limited to: (1) claims for damages; and (2) claims for reimbursement arising from property loss, personal injury or accident damage related to the use, care, or operation of Federal owned/leased equipment.

   *d.* Damage to or loss of federal owned/leased equipment will be reported and investigated in accordance with applicable DoD and Service level property accountability regulations. The grantee's or employee's liability for lost or damaged Federal owned/leased property will be as determined in the approved investigation or Financial Liability Investigation of Property Loss [FLIPL] findings.

## Chapter 9
## In-Kind Assistance

**9-1. General**

   a. In-Kind Assistance is the federal procurement of supplies and or services, in lieu of funds, to satisfy NGB's obligation of assistance support to the grantee.

   b. In-Kind Assistance can be federally procured supplies, services, or construction. Services can include real property maintenance and repair. IKA for construction is permitted only if:

   (1) The State law authorizes the Federal Government to perform federal contracting on State land, and the State Attorney General provides a written opinion to that effect. Nonetheless, the State Attorney General shall not have to provide more than one opinion to that affect during a fiscal year.

   (2) The use of In-Kind Assistance is an exception to the standard practice of using the grantee's procurement system. The grantee must submit a written request demonstrating a compelling reason to use Federal procurement to the grantor. The grantor is the final approval authority for all requests for In-Kind Assistance. Nonetheless, absent statutory or regulatory authority, the grantor has no authority to mandate the use of IKA or refuse to reimburse the grantee for authorized expenses that were not procured through IKA. The grantor may consider all methods of Federal procurement to include Economy Act transactions.

   c. Equipment. Ownership of equipment acquired by the grantor remains vested with the Federal government and is considered to be Federal Owned Equipment (Chap 8). The provision of such equipment is not considered In-Kind Assistance.

   d..Use of the Federal procurement system to contract supplies, services, or construction does not relieve the State of its responsibility to meet the match or share requirements specified in the appropriate Agreement.

   e. In-Kind Assistance shall be for items/services identified and authorized in the appropriate agreement.

**9-2. Transacting IKA**

   a. The costs of IKA are paid for with funds programmed to be expended within an agreement. These funds shall be de-obligated from the agreement and then be obligated as a Federal procurement on the Federal side. Use of IKA does not reduce nor relieve the State's share requirements.

   b. Whenever the grantor provides "in kind assistance" the costs of which are funded in part by the grantor contributions and in part by grantee contributions as provided for in the agreement or appendix, the grantee shall credit the amount of its share of the cost of in-kind assistance against costs claimed for reimbursement under the Agreement on the next voucher submitted following the grantor's provision of in-kind assistance to the grantee.

**9-3. Accounting for IKA**

Accounting for IKA will be in accordance with paragraph 10-4 and paragraph 11-7 of this regulation.

US_00006744

**Chapter 10**
**Defense Assistance Awards Data System Reporting**

**10-1. General**

*a.* The Defense Assistance Awards Data System (DAADS) is the Department of Defense (DoD) automated reporting system of the DoD Assistance Award Action Report (DD Form 2566) for all Federal domestic assistance programs which includes all DoD Grants, cooperative agreements and other assistance arrangements.

*b.* The DoD Assistance Award Action Report is a U.S. Congressional mandate (FFATA, Public Law 109-282) that applies to all Federal domestic assistance programs including all Grants, cooperative agreements and other assistance arrangements. In accordance with the above authority all Federal Grant and Cooperative Agreement obligations, to include both increases and decreases, are required to be reported to Congress in this special report.

**10-2. Responsibilities**

*a.* All National Guard Federal assistance programs funded through an NGB Cooperative Agreement shall be reported in DAADS.

*b.* Defense Manpower Data Center/Statistical Information Analysis Division (DMDC/SIAD) is responsible for the DAADS report. NGB-PARC-A is responsible for coordinating with DMDC/SIAD the development of NGB specific DAADS report instructions and for providing grant officers with reporting instructions.

*c.* Grants officers, through their grant officer's representatives, are responsible for reporting directly to DMDC/SIAD, through DAADS, within 15 days of award/modification date.

**10-3. Catalog of Federal Domestic Assistance Program Numbering System**

The Catalog of Federal Domestic Assistance (CFDA) Program is a database maintained by the General Services Administration that classifies all Federal programs that provide funding to local government agencies, private institutions, and individuals. Each program is assigned a number and name. The Catalog of Federal Domestic Assistance (CFDA) Program Numbering System to be used by NGB is as follows:

*a.* 12.400 Military Construction, National Guard (MILCON) (both ARNG and ANG projects).

*b.* 12.401 National Guard Military Operations and Maintenance (O&M) (both ARNG and ANG projects).

*c.* 12.404 National Guard Civilian Youth Opportunities Program (both ARNG and ANG projects).

**10-4. In-Kind Assistance, Program Income and State Share Reporting**

*a.* In-Kind Assistance is the Federal procurement of supplies or services provided for the grantee in support of a CA (Reference chapter 9). The costs of supplies or services purchased as IKA by the grantor are required to be reported on the Contract Action Report (CAR) through the Federal Procurement Data System-Next Generation (FPDS-NG). The value of IKA shall not be reported in DAADS. ( DODGARS 21.545)

*b.* Program Income is the income received by the grantee that is directly generated by an activity supported through a Cooperative Agreement. The amount reported shall be in direct proportion of the Federal percentage in the Agreement's funding.

*c.* Program Income shall be reported in the DAADS as the non-Federal dollars amount; it shall not be reported as Federal assistance dollars.

*d.* The grantee's share is the cost, as identified in the budget and within the agreement, to be funded by the grantee for the performance of a CA. The grantee's share shall be reported in DAADS as the non-Federal dollars amount; it shall not be reported as Federal assistance dollars.

**10-5. DAADS Report**

*a.* Instructions for completing, filing and maintaining the DoD Assistance Award Actions Reports through DAADS can be found at the NGB-PARC-A GKO Webpage.

*b.* Every CA, whether an appendix under the O&M MCA or one of its technical appendices, or a Special Military Project CA, has funds obligated/de-obligated through a CA Modification (Reference chapter 3). DoD assistance Award Action Reports accomplished through the DAADS shall be done for every CA funding action whether it is an increase or decrease, whether it occurs monthly, quarterly, incrementally or by phases.

US_00006745

**Chapter 11**
**Finance**

**11-1. General**
This chapter describes procedures for finance related actions for ARNG and ANG Agreements.

*d.* Agreement Budget Process.  O&M MCA Appendices and Special Military Project Agreements are funded annually. The format, process and timeline for the submission of the proposed budget requests is indicated in each Agreement. CA PMs must adhere to the financial process requirements listed in their respective Agreement.

(1) NGB Directorates/NGB-OPR-PMs should direct the CA PM to submit a proposed annual budget in sufficient detail to allow the NGB PM to review and issue an approved budget for the execution of the appendix/agreement. The *approved budget* is the amount the CA PM/grantee anticipates will be needed to execute the appendix/agreement. The approved budget amount should be identified and entered in the appropriate section of the appendix/agreement prior to the beginning of the fiscal year.

(2) Though some NGB-OPR-PMs require a proposed annual budget submission from the CA PM, not all do. Some NGB Directorates/Activities issue a lump sum budget amount to the Command without specifying an exact amount that is to be allocated to the agreement.  In those instances the Command and CA PM must identify a specific proposed budget to be entered in the appropriate section of the appendix/agreement.  The approved budget amount should be the total dollar amount the grantor anticipates, subject to the availability of funds, being available for reimbursement for the grantee to fulfill its requirements in the Federal fiscal year.  The approved budget amount should be identified and entered in the appropriate section the appendix/agreement prior to the beginning of the fiscal year.

(3) NGB Directorates/ NGB-OPR-PMs should provide, in writing, an approved budget amount for their respective appendix/agreement to States executing the appendix/agreement.   The *approved budget* is the total amount that the NGB Directorate anticipates, subject to the availability of funds, being available to reimburse the grantee for its costs in fulfilling its responsibilities under a CA Appendix or agreement.  The approved budget amount will be entered in the funding limitation section of the Appendix by the GOR at the beginning of each FY.

*e.* NGB-ARC and NGB-FM will issue funds to the USPFO/Assistant USFPO Air (Fiscal) via Funding Authorization Documents (FAD). State CA PMs will submit request for funding modifications to the GOR as required based on the issued FAD.

*f.* Electronic data interchange (EDI) and electronic fund transfers (EFT) are the DoD standard used to process payment requests and related actions.

**11-2. Obligation**
*d.* Federal (grantor) Obligation.  Funds are obligated when the Grant officers or modification is executed, as stated in the Agreement or NGR 5-1, chapter 3.  The amount stated in the Total Dollars Obligated column, which is the allotment applied to the agreement in the Funding Limitation Section of the agreement or appendix, represents the Government's maximum amount liability.

*e.* State (grantee) Obligation.  Grantees must obligate funds in the Federal fiscal year or period of Federal availability as stated in the agreement/appendix. An obligation means any action under State law or procedure requiring payment by the grantee.  A representation by competent authority within a State that it has obligated funds under State law may be relied upon.

**11-3. Standards of Financial Administration**
*d.* The grantee must expend and account for CA funds in accordance with State laws and procedures for spending and accounting for its funds.  Grantee fiscal control and accounting procedures, as well those of its sub recipients and contractors, must be sufficient to:

(1) Permit preparation of reports required by NGB, DoD and the other Federal Government agencies.

(2) Permit the tracing of funds to a level of expenditure adequate to establish that such funds have not been used in violation of the restrictions and prohibitions of applicable Federal and State statutes.

*e.* The grantee must maintain effective internal controls and accountability over all CA funding.

*f.* All funds provided by the grantor (USPFO) are to be used solely for the purpose of making payments for items or services of allowable costs as specified in the Agreement.

*g.* Statutory or regulatory restrictions on Federal appropriations use are not normally removed by obligating appropriations to the CA.  Costs incurred by a grantee under a CA that violate Federal agency appropriations restrictions may not be allowed. The USPFO shall resolve any questions (e.g. Bona Fide Need Rule) relating to the use or reimbursement funds in the Agreement prior to the funds being executed.

US_00006746

*h.* Direct payments from the Federal Government (USPFO) to any grantee contractor employee, grantee vendor or State government employee are prohibited unless directed by a court of competent jurisdiction.

*i.* Advance payments approved by the USPFO are considered a disbursement against the Operations & Maintenance (O&M) appropriation (AMSCO/EEIC). Advances are collected by processing reimbursements from the grantee as credit disbursements to the advance accounts and debiting the appropriate O&M accounting line.

## 11-4. Payment Processing (ARNG and ANG)

*a.* The NGB Cooperative Agreement program operates on the basis that the grantee expends State government funds first and then submits request (vouchers) for reimbursement from NGB for allowable CA costs. All approved CA agreement payments (to include Advances) made to the grantee by NGB are reimbursable payments. To process reimbursement payments the grantee shall provide an OMB Standard Form (SF) 270 (Request for Advance or Reimbursement) with supporting documentation to the CA PM. The supporting documentation will itemize, by AMSCO and EEIC, the amount of funds expended and the corresponding grantee accounting classification to be reimbursed.

*b.* ARNG CA PMs, or USPFO appointed alternate CA PMs, shall sign block 13 of the SF 270 and forward it to the USPFO comptroller office after reviewing and reconciling as needed the SF 270 and accompanying documentation with the grantee.

*c.* ANG CA PMs will review and reconcile as needed the SF 270 and accompanying documentation with the grantee and forward the SF 270 to the Asst USPFO Air (Fiscal) for his/her signature. ANG CA PMs do not sign in block 13.

*d.* Additional signatures (i.e. ANG CA PM, State Military Dept) required by the grantor will be entered in "This Space for Agency Use" block of the SF 270.

*e.* The signed SF 270, with required supporting documentation, shall be processed through the USPFO ARNG Comptroller and Assistant USPFO ANG Comptroller offices in accordance with DFAS and DoD finance requirements, to reimburse the grantee for authorized expenditures.

*f.* Upon review of the authorized charges by the CA PM, the USPFO/Asst USPFO Air (Fiscal) will reconcile and adjust the federal financial records accordingly.

*g.* The USPFO/Asst USPFO Air (Fiscal) will process reimbursement request from the grantee to DFAS so as to meet the requirements of U.S Treasury, 31 Code of Federal Regulation, Part 205, Rules and Procedures for Efficient Federal-State Funds Transfers 31 CFR Part 205 and the Cash Management Information Act Treasury-State Agreements.

## 11-5. Advance Payment Method

*a.* The advance method will be used only when grantees are required to have sufficient funds on deposit in the state treasury before a funding obligation may be incurred. To request authority for the advance method the grantee shall annually prepare and sign a memorandum (figure 11-1) and forward it to the USPFO NLT 1 Sep. The memorandum will include:

(1) An Estimated Cash Flow Requirements Chart (figure 11-2) listing cash requirements for each separate Agreement, MCA Appendix, Military Youth Program CA or Special Military Project Agreement.

(2) The grantee must submit an updated Estimated Cash Flow Requirements Chart with each monthly or periodic request for a cash advance payment.

(3) A statement that the grantee agrees that all advance payments shall be used solely for authorized services as specified in the agreement or Appendix.

(4) A statement that grantee books and records shall be made available, on request, for properly authorized representatives of the USPFO, CNGB, the Comptroller General, and if necessary, the State Auditor.

(5) A statement that the grantee agrees to minimize the time elapsing between the transfer of funds from the U.S. Treasury and their disbursement by the State. (no more than 45 days)

(6) The name, address, telephone number and email address of the State action officer to contact for additional information or if clarification is required.

*b.* States authorized the advance method must adhere to the following additional standards:

(1) The advance payment amount shall be placed in an account indicating that this is an advance for the State Army or Air National Guard.

(2) The grantee's advance payment shall not exceed the unpaid portion of the CA. Therefore, reimbursements at the end of the fiscal year shall directly offset the advance held by the State.

(3) The grantee shall execute a close out in accordance with paragraph 11-9. If there is a balance remaining on the advance at the time the CA is completed, the State (state treasury) will issue a check payable to the Disbursing

21

Officer for the remaining advance in the State account. The USPFO shall deposit the check funds via a Cash Collection Voucher (DD Form 1131) at the supporting DFAS or Operating Location (OPLOC).

c. Interest.

(1)  The amount of interest due to the United States on funds advanced to the State or of interest due the State shall be determined and paid in accordance with 31 USC 6503. Intergovernmental Financing and such regulations as have been issued by the U.S. Department of Treasury and the DoD.

(2)  The USPFO and Assistant USPFO for Air (Fiscal) shall monitor and minimize the time elapsing between the transfer of funds from the U.S. Treasury and the disbursement by the State, whether disbursement occurs before or after the transfer.

(3)  The State may be accountable for interest earned on advances when the State does not minimize the time elapsing between the transfer of funds from the Treasury and the disbursement time.

### 11-6. Accounting for Program Income

a.  Program income is reported on reimbursement or liquidation of advance payment vouchers as soon as such income is considered "received" pursuant to State accounting procedures.  Un-liquidated amounts of program income will be carried forward on the next voucher.

b.  The amount of program income will be added to the appropriate agreement budget as a State contribution regardless of the percentage of Federal contribution reflected in the agreement. The maximum estimated cost reflected in the appropriate CA budget will increase by the amount of program income; however, the maximum Federal funding limitation reflected in the agreement will not increase.

c.  The amount the grantee requests for reimbursement will be reduced by the amount of program income received.

d.  The USPFO will record program income as a reimbursement to the total requirement listed in the appropriate line of the approved activity budget or financial plan. Reimbursements are credited in the same proportion as the negotiated charges.

e.  The grantee must expend funds derived from program income under the terms of the applicable appendices in the accounts reported (unless the State has authority to move expenditures to other MCA accounts).  The grantee may not request Federal reimbursement for expenditures of program income funds and must maintain, for the USPFO, a fully auditable accounting of these expense transactions.

### 11-7. Accounting for In-Kind Assistance (IKA)

a.  Whenever IKA is approved by the grantor, the total dollar amount of the IKA shall be de-obligated from the Agreement through a modification thus reducing the total dollars available to the grantee. When an agreement has a grantee match/share the grants officer is responsible for ensuring that the grantee meets its match/share requirements.  The grantee shall credit the amount of its share of the costs of in-kind assistance against the costs claimed for reimbursement under the CA.  This is accomplished as a credit from the grantee on a subsequent request for reimbursement; or as a credit on the next advance payment request.  IKA is fiscal or program year sensitive and as such the credit due the Federal government may be in the form of a check if IKA coincides with the end of a fiscal year.

b.  Government furnished property or equipment is not IKA because title to the property remains vested with the Federal government.

### 11-8. Accounting for  Direct Reimbursement for Costs through Military Interagency Payment Request (MIPR)

a.  The grantor may receive a MIPR to pay for the Incidental Incremental Costs (IIC) associated with a Military agency's use of facilities supported through a Grant officer. A MIPR will be processed IAW DFAS directives. Funds collected by the grantor as direct reimbursements will be added, through a CA modification, to the total dollars obligated for the appropriate CA. Those funds will then be available for reimbursement to the grantee.

b.  Typically   a   MIPR   will   be   supported   by   an   Intraservice   Support   Agreement   or   an Interservice/Intragovernmental Support Agreement.

c.  A MIPR shall not be used for the direct reimbursement in support of grantee employee or contract hire positions.

d.  IIC funds received via a MIPR are not Program Income.

e.  The USPFO will apply the proceeds from user charges to the appropriate AMSCO or EEIC in the same proportion these AMSCOs or EEICs constituted the function that generated the user charges. The USPFO will pass on, to the grantee, the appropriate amount from any proceeds that resulted from the use of facilities for which there is a required State matching share under the MCA.  The amount of this income shall be credited against the total

US_00006748

requirements listed in the appropriate line of the approved activity budget or financial plan in the applicable Appendices. The grantee must request reimbursement under the terms of the applicable Appendices in the reported accounts unless they have approval to move the expenditures to other MCA accounts.

### 11-9. Accounting for Rebates, Credits, Discounts and Refunds

The grantee, when receiving any funds for rebates, credits, discounts and refunds, shall return to the grantor the Federal proportional share based upon the matching percentage of the earning CA appendix. This will be accomplished by applying the appropriate credit on the Standard Form 270. In those cases where the grantee receives an aggregate payment that crosses more than one CA appendix, the grantee will coordinate with the grantor as to the best way to credit these funds. The grantee shall promptly, but a least quarterly, remit interest earned on advances to the grantor. The grantee may keep interest amounts of $100.00 per year for administrative expenses.

### 11-10. Final Accounting and Settlement

*a.* Some Agreements/Appendices cannot be liquidated of all obligations made during the period of fund availability. Some disbursements, both Federal and State, are made months and sometimes years after fund availability has expired. However, a CA cannot be closed out until all outstanding obligations have been paid or, with justification, cancelled by the USPFO. Timely close out of Grant officers is a key internal control measure.

*b.* Within 90 days after the end of the federal fiscal year, or upon termination or closeout of an Agreement, whichever is earlier, the grantee shall provide to the USPFO, a final accounting of all funding and disbursements under the agreement for the fiscal year.

*c.* If un-liquidated claims and un-disbursed obligations arising from the grantee's performance of the agreement appendix will remain 90 days or more after the close of the fiscal year, the grantee shall provide to the USPFO (NLT 31 Dec) a written request to keep the agreement appendix funding open. The request will include a consolidated, detailed listing of all un-cleared obligations and a projected timetable (date) for their liquidation and disbursement. The USPFO shall then set an appropriate new timetable for the grantee to submit final accounting and settlement. Subsequent requests will be submitted by the grantee every 90 days or so thereafter as long as there are un-liquidated claims or un-disbursed obligations. The USPFO, with proper justification, can choose to not extend the timetable and require that the remaining agreement appendix funding be de-obligated.

*d.* Costs incurred in a fiscal year which are not disclosed by the grantee within 90 days of the end of the Federal fiscal year shall not be eligible for reimbursement by NGB. The USPFO may extend the 90 day limit for good cause shown.

*e.* The USPFO shall close out the agreement or appendix for a specific fiscal year when it has been determined that all applicable administrative and financial actions have been completed, but not until all such actions have been completed.

### 11-11. Records

*a.* The grantee, the USPFO and the Assistant USPSO for Air (Fiscal) shall make records and accounts pertaining to the CA available for inspection by auditors and other authorized Government officials as required.

*b.* All financial and programmatic records, supporting documents, statistical records, and other records of the grantee which are pertinent to the CA shall be retained for six years and three months from the ending date of the CA. If any litigation, claim, negotiation, audit or other action involving the records has been started before the expiration of the three year period, the records must be retained until completion of the action and resolution of all issues which arise from it, or for a minimum of six years and three months whichever is later.

US_00006749

MEMORANDUM FOR USPFO FOR (State)

SUBJECT:  Request for FYXX Advance Payment Approval - (State),

1.   Request advance payment authority for Army or Air National Guard's FYXX Cooperative Agreement (No.) between the National Guard Bureau and (State).

2.  This request is required by (State) Statute (Number) which precludes the incurring of an obligation by the (State) unless funds are available in the state treasury in the form of an unencumbered balance to pay for the obligation. (State) has insufficient funds to fully support the Federal portion of this agreement.   [IF APPLICABLE]
or

The funds apportioned by the (State) as its share of the agreement cost are not adequate to support the obligation and disbursement of funds for service required under the agreement.  Therefore, in order to provide the service as required, an advance payment from the Federal Government is necessary.

3.   (State) agrees that all advance payments received under this agreement shall be used solely for the authorized services specified in the agreement.  Further, the books and records of the State shall be made available, on request, for inspection by properly authorized representatives of the United States Property and Fiscal Officer; Chief, National Guard Bureau and the Comptroller General.  The books and records are also subject to the review of the State Auditor.

4.  Furthermore, (State) agrees to minimize the time elapsing between the transfer of funds from the U.S. Treasury and their disbursement by the State.

5.  Request Reimbursement Cycle of (No.) days.

6.  The Cash Flow Forecast is attached and deviations in excess of 10% have been explained in a footnote.

7.  Point of contact is (Name), (Office Symbol), (Telephone Number - commercial and DSN)

Encl:
Estimated Cash Flow Requirements                    (Grantee Representative)
                                                    Signature

### Figure 11-1 Sample Request for Advance Payment Approval

24

(STATE)

AGREEMENT NUMBER (#)

FISCAL YEAR 20XX

ESTIMATED CASH FLOW REQUIREMENTS

| | APPENDIX 1002 | APPENDIX 1003 | APPENDIX 1004 | TOTAL |
|---|---|---|---|---|
| OCT XX | 27,500 | 9,600 (b) | 5,700 | 42,800 |
| NOV XX | 27,500 | 29,600 | 5,500 | 62,600 |
| DEC XX | 27,500 | 9,600 | 5,250 | 42,350 |
| JAN XX | 35,000 (a) | 9,600 | 5,250 | 49,850 |
| FEB XX | 27,500 | 19,600 | 5,250 | 52,350 |
| MAR XX | 27,500 | 9,600 | 5,250 | 42,350 |
| APR XX | 30,000 | 9,600 | 5,250 | 44,850 |
| MAY XX | 30,000 | 9,600 | 5,450 | 45,050 |
| JUN XX | 30,000 | 14,600 | 5,500 | 50,100 |
| JUL XX | 30,000 | 9,600 | 5,500 | 45,100 |
| AUG XX | 30,000 | 9,600 | 5,500 | 45,100 |
| SEP XX | 30,000 | 9,600 | 5,300 | 45,000 |
| TOTAL | 352,500 | 155,200 | 64,800 | 567,500 |

**Figure 11-2   Sample Estimated Cash Flow Requirements Chart**

25

**Appendix A**
**References**


**Section I**
**Required Publications**

This section has no entries


**Section II**
**Related Publications**

**AFI 25-201**
Logistics- Support Agreements Procedures

**ANGI 65-601**
Air National Guard Financial Management

**DAADS Instructions**
Defense Assistance Awards Reporting Data System

**DFAS 37-100- XX Manuals**
The Army Management Structure

**DoD Instruction 4000.19**
Inter-service and Intra-governmental Support

**DODD 3210.6R**
Defense Grants and Agreements Regulatory System (DGARS)

**DoD FMR V12 Ch5**
Grants and Cooperative Agreements

**NGB Office of the PARC Document Library**
Grants Cooperative Agreement Policy Letters (GCAPL) and Point Papers

**OMB Cir No A-89**
Federal Domestic Assistance Program Information

**OMB Cir No A-133**
Audits of States, Local Governments and Non-Profit Organizations

**OMB Cir No A-102**
Grants and Cooperative Agreements with State and Local Governments

**OMB Cir A-123**
Internal Control Systems Management Accountability and Control

**2 CFR 215**
Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations

US_00006752

**2 CFR 225**
Cost Principles for State, Local and Indian Tribal Governments

**10 USC Ch 1803**
Facilities for Reserve Components

**31 CFR 205**
Rules and Procedures for Efficient Federal-State Funds Transfers

**31 USC Ch 63**
Using Procurement Contracts and Grant and Cooperative Agreements

**31 USC Ch 65**
Intergovernmental Cooperation

**31 USC Ch 75**
Requirements for Single Audits

**32 CFR 33**
Administrative Requirements for Grants and Cooperative Agreements to State and Local Governments

**32 USC**
United States Code

**Section III**
**Prescribed Forms**

This section has no entries

**Section IV**
**Referenced Forms**

**DD Form 577**
Appointment/Termination Record – Authorized Signature

**DD Form 2566**
DoD Assistance Award Action Report

**SF 270**
Request for Advance or Reimbursement

27

US_00006753

**Glossary**

**Section I**
**Abbreviations**

**ANG**
Air National Guard

**ARNG**
Army National Guard

**CA**
Cooperative Agreement

**CA PM**
Cooperative Agreement Program Manager at State level

**CFR**
Code of Federal Regulations

**CFMO**
Chief Facilities Management Officer

**CNGB**
Chief, National Guard Bureau

**DAADS**
Defense Assistance Awards Reporting System

**DoDGARS**
Defense Grants Management Information System

**DoD**
Department of Defense

**GOR**
Grants Officer's Representative

**MCA**
Master Cooperative Agreement

**MCCA**
Military Construction Cooperative Agreement

**NG**
National Guard

**NGB**
National Guard Bureau

**NGB-OPR- PM**
National Guard Bureau Office of Primary Responsibility Program Manager

28

**OMB**
Office of Management and Budget

**SJA**
Staff Judge Advocate (Local AGR)

**TAG**
The Adjutant General

**USC**
United States Code (of Federal Public Law)

**USPFO**
United States Property and Fiscal Office or United States Property and Fiscal Officer

**Section II**
**Terms**

**Army National Guard and Air National Guard Master Cooperative Agreements**
Any agreements entered into by the Department of Defense, National Guard Bureau, with the States, funded by Department of Defense appropriations for the Army National Guard and Air National Guard, for construction, minor construction, maintenance, repair, or operation of facilities, operations of the Army National Guard and Air National Guard, and for other programs authorized and directed by Congress or the Department of Defense to be performed by the States and the National Guard Bureau.

**Air National Guard**
That part of the organized militia of the several States and Territories, Puerto Rico, and the District of Columbia, active and inactive, that—a) is an air force; b) is trained, and has its officers appointed, under the sixteenth clause of section 8, article I of the Constitution; c) is organized, armed, and equipped wholly or partly at Federal expense; and d) is federally recognized (32 U.S.C. § 101).

**Army National Guard**
That part of the organized militia of the several States and Territories, Puerto Rico, and the District of Columbia, active and inactive, that—a) is a land force; b) is trained, and has its officers appointed, under the sixteenth clause of section 8, article I of the Constitution; c) is organized, armed, and equipped wholly or partly at Federal expense; and d) is federally recognized (32 U.S.C. § 101).

**Airport Authority**
A Public Agency controlling a Public Airport A Public Agency means a State or any agency of a State, a municipality or other political subdivision of a State, a tax supported organization, or an Indian tribe or pueblo. Public Airport means an airport which is used for or to be used for public purposes, under the control of a public agency, and the landing area of which is publicly owned. [Extracted from Public Law 97-248]

**Chief, National Guard Bureau**
The Chief, National Guard Bureau means the head of the National Guard Bureau or his/her designee.

**Direct Costs**
Are costs that can be identified specifically with a particular cost objective. These costs may be charged directly to the CA against which costs are finally lodged. Direct costs may also be charged to cost objectives used for the accumulation of costs pending distribution in due course to the CAs ultimate cost objective.

**Equipment**
For the purposes of 32 CFR 33.32, equipment means any equipment purchased for the performance of this MCA that is not "military equipment".

29

US_00006755

**Fiscal Year**
The Federal Fiscal Year that runs from October 1 to September 30

**Grantee**
The State (TAG), organization or other entity receiving a grant or cooperative agreement from a DoD Component

**Grants Officer (Grantor)**
An individual appointed by the NGB, Head of Contracting Activity (HCA) authorized to provide approvals, receive reports, modify or change the terms of this MCA, provide funds under the MCA or take any other action for NGB under this MCA except for deciding any appeal of a dispute under this MCA as provided in Article XII – Termination, Enforcement, Claims, Disputes, Resolution and Appeals, Section 1203.

**Grants Officer Representative**
A representative of the grants officer acts within the limits of his or her authority as delegated, in writing, by the grants officer

**Indirect costs**
Are generally unallowable for CA purposes.  Indirect costs are those costs incurred for a common or joint purpose benefiting more than one cost objective, and not readily assignable to the cost objectives specifically benefited.

**In-Kind Assistance**
The Federal procurement of supplies and or services, in lieu of funds, to satisfy NGB's obligation of assistance support to the grantee

**In-Kind Contribution**
Property or services (valued at the time of the contribution at fair market value) which benefit a federally assisted program or activity contributed by the grantee to satisfy (in whole or in part) the grantee's match share of assistance to the agreement.

**Interservice. Intraservice or Intragovernmental Support Agreement**
A formal agreement that defines recurring services to be provided by one supplier to one or more receivers and defines the basis for calculating reimbursement charges for services.  It shall be used to define clearly the terms and conditions of the agreement including, when appropriate, a cost breakdown, and special instruction for each area or category of support.

**Local Government Entities**
State political subdivisions, counties, cities, towns, townships, airport authorities, school districts

**National Guard Bureau**
Is a Joint Bureau of the Department of the Army and the Department of the Air Force, headed by a chief who is the advisor to the Army Chief of Staff and the Air Force Chief of Staff on National Guard matters.  The National Guard Bureau is the channel of communication between the departments concerned and the several States, Territories, Puerto Rico, and the District of Columbia, on all matters pertaining to the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States.

**State**
Any of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any Territory or possession of the United States, or any agency or instrumentality of a State exclusive of local governments. (DoDGARS, Part 33.3)

**Supplies**
For the purposes of 32 CFR 33.33, supplies means any supplies purchased for the performance of this MCA that are not "military supplies".

US_00006756

**Territory**

Territory means any Territory. However, for purposes of laws relating to the militia, the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States, "Territory" includes Guam and the Virgin Islands (32 U.S.C. § 101).

**The Adjutant General**

*a.* The Adjutant General (TAG) is the head of the State [Commonwealth, or Territory] Military Department, appointed by the Governor of the State [Commonwealth, or Territory], according to the respective State's [Commonwealth's, or Territory's] constitution, or statute.

*b.* The TAG: 1) receives funds and property and accounts for all expenditures and property acquired through this MCA; and 2) make returns and reports concerning those expenditures and that property, as required by this MCA.

**United States Property and Fiscal Officer**

*a.* The United States Property and Fiscal Officer (USPFO) is the qualified commissioned officer of the Army National Guard or the Air National Guard, as the case may be, designated by the Chief, National Guard Bureau, to be the United States Property and Fiscal Officer of a State or Territory.

*b.* The USPFO receives and accounts for all funds and property of the United States in the possession of the National Guard for which he/she is property and fiscal officer; and make returns and reports concerning those funds and that property, as required by the Secretary concerned. (32 USC Section 708)

31

# Attachment 2

## MASTER COOPERATIVE AGREEMENT

| AGREEMENT NO. W912TF-19-2-1000 | | | PAGE 1 OF 23 PAGES | | |
|---|---|---|---|---|---|
| ISSUED BY: NATIONAL GUARD BUREAU | | | ISSUED TO: THE STATE OF NEW HAMPSHIRE | | |

### TABLE OF CONTENTS

| ARTICLE | DESCRIPTION | PAGES | ARTICLE | DESCRIPTION | PAGES |
|---|---|---|---|---|---|
| I | SCOPE, PURPOSE AND AUTHORITY | 1 | VII | GENERAL PROVISIONS | 2 |
| II | OBLIGATIONS OF THE PARTIES | 1 | VIII | APPLICABLE LAWS AND REGULATIONS | 6 |
| III | COSTS | 2 | IX | PROCUREMENT | 1 |
| IV | FUNDING LIMITATIONS | 1 | X | PROPERTY | 1 |
| V | PAYMENT | 1 | XI | LEGAL AUTHORITY | 1 |
| VI | DEFINITIONS | 3 | XII | TERMINATION, ENFORCEMENT, CLAIMS, DISPUTES RESOLUTION AND APPEALS | 1 |
| | | | ATTACHMENTS | APPENDICES | 1 |

### EXECUTION

By executing this Master Cooperative Agreement, the parties agree to the terms and conditions contained herein, including attachments.

IN WITNESS WHEREOF, the parties by their authorized representatives, execute this Master Cooperative Agreement.

THE STATE OF NEW HAMPSHIRE

BY: _____
DAVID J. MIKOLAITIES
Major General, NHNG
The Adjutant General

Date: _1/29/2019_

Approved as to legal form:
_____
New Hampshire Attorney General's Office

Date: _1/25/2019_

NATIONAL GUARD BUREAU

BY: _____
BRIAN C. ELBERT, Col, USAF
USPFO for New Hampshire

Date: _1/3/2019_

Approved as to legal form:
_____
JEFFREY S. CHANG
LTC, NHNG
Staff Judge Advocate

Date: _21 December 2018_

October 2018

## ARTICLE I – SCOPE, PURPOSE AND AUTHORITY

**Section 101. General.**

a. The National Guard Bureau (NGB) and the State (Grantee) have entered this Master Cooperative Agreement (MCA) to establish the terms and conditions applicable to the contribution of NGB funds and In-Kind Assistance for the operation and training of the State Army and Air National Guard.

b. This MCA and associated appendices include all terms and conditions related to NGB's contribution of Cooperative Agreement funds for the operation and training of the Army and Air National Guard within the State/Territory or Commonwealth. Funds, equipment, supplies, or training acquired, issued, supplied, assigned or provided by NGB for the operation and training of the State Army and Air National Guard under applicable statutes and directives, are not covered by this MCA.

c. Attachment A contains the provisions required by OMB, published in 2 CFR part 200. They apply to and are incorporated in this MCA, each appendix hereto and to such other NGB assistance awards/agreements within which reference to the MCA is made.

d. The MCA is not itself funded and is not a grant or assistance award. It provides the terms and conditions applicable to the appendices hereto – each of which is an assistance award - and to those separate awards/agreements which refer to the MCA.

**Section 102. Scope.**

The scope of this MCA includes all activities enumerated in the Appendices and in non-appendix awards/agreements made or administered by NGB within which reference to the MCA is made.

**Section 103. Performance Specifications.**

Specifications, for the performance of activities within the scope of this MCA, are contained in the Appendices and separate agreements.

**Section 104. Authority.**

a. Title 32 U.S.C. §§ 106 and 107 authorize the NGB to contribute funds for the support of the operation and training of the State Army and Air National Guard.

b. This MCA is a Cooperative Agreement within the meaning of 31 U.S.C. §§ 6301-6308.

2

1 January 2019
30 September 2022

US_00000021

October 2018

## ARTICLE II – OBLIGATIONS OF THE PARTIES

**Section 201.    Obligations of the Grantee.**

a.       The Grantee shall exercise its best efforts to supervise, manage, operate and/or maintain all activities or projects within the scope of this MCA according to sound, efficient, commercial practice and according to the terms, condition, and specifications of this MCA and its Appendices.

b.       The Grantee will obligate sufficient funds to pay its share of the costs for awards made under this MCA and, where NGB provides services in kind, the costs of which are to be shared under the terms of each award, and to reimburse NGB in the manner provided under this MCA.

c.       The Grantee's obligations are contingent upon NGB funding the MCA Appendices in each fiscal year.

**Section 202.    Obligations of NGB.**

a.       NGB shall reimburse the Grantee for the allowable costs incurred in performance of this MCA and appendices according to the terms and conditions for reimbursement.

b.       Whenever the terms of this MCA or an appendix provide for approval by NGB, the approval will not be unreasonably withheld.  Any request for approval shall be considered and acted upon by NGB in a timely fashion.

c.       The obligations of NGB are subject to the availability of federal funds for the MCA Appendices and the Grantee's funding contribution for its share of the costs of this MCA.

**Section 203.    Obligations of Both Parties-Close out.**

NGB and the Grantee both share in the responsibilities for accurate and timely closeouts of all appendices under this MCA.  Fiscal year end closeouts and/or projected completion/termination closeout of appendices shall be in accordance with current PARC policy, ~~the former~~ NGR 5-1 Chapter 11 or successor CNGB I & M, **and 2 CFR §200.343**

**Section 204.    Optional Format for Unchanged Appendices and Separate Agreements**

Grantee's acceptance of the subsequent award of a numbered appendix or separate agreement the terms and conditions of which, but for funding and dates, are unchanged from the prior award, may be recorded on the short form template posted on GKO conformed to that appendix or separate agreement.

3

US_00000022

October 2018

## ARTICLE III – COSTS

**Section 301.    General.**

     a.    NGB shall reimburse the Grantee for all activities and costs that are allowable, allocable and reasonable in the performance of this MCA.

**Section 302.    Estimated Cost.**

     a.    The total estimated costs under this MCA are specified in each Appendix.

     b.    The Grantee share in the costs under this MCA are provided for in each associated appendix.

**Section 303.    Cost Sharing.**

     Wherever an item of cost for the performance under this MCA is identified to be funded in-part by Grantee contributions and in-part by NGB contributions, NGB shall be obligated to reimburse the *Grantee only for its* percentage share of the total allowable costs that would otherwise be allowable under this MCA.

**Section 304.    Allowability of costs.**

     a.    Except as otherwise stated in this Article, elsewhere in this MCA or in the specific appendix, the allowability of costs incurred by the Grantee in performance of MCA appendices shall be determined according to the terms and conditions of **2 CFR Part 200, as amended,** and current PARC policy, NGR 5-1 Chapter 5 or successor CNGB I & M, effective at the time the cost is incurred.

     b.    **The provisions of 2 CFR §200.400 are applicable to costs for awards to states and local governments made against this MCA, including but not limited to §200.416 (Special Considerations for States, Local Governments and Indian Tribes) and §§200.420 et seq. (General Provisions for Selected Items of Cost).**

     c.    The allowability of costs has no effect on the maximum funding level of this cooperative agreement. NGB has no liability to reimburse any cost over and above the maximum amount of funding obligated in each appendix to this cooperative agreement, even if such cost would otherwise be allowable.

**Section 304-A  Authorized charges**

     a.   Personnel.

     (1)   Payments for salaries, to include approved overtime and allowable benefits in accordance with state personnel policy for the payment of salary and benefits of like state government positions within the same geographic area.  If a state has a pay raise, pay freeze or pay cap, a hiring freeze or employee furloughs for like positions throughout the state, then state employees under this Appendix will have corresponding limitations. When there is no like state government position available, salaries and benefits will be equivalent to a comparable grade and series Federal Civil Service position in the geographic area.  Raises for federally-reimbursed state employees and state-contracted personnel will not exceed those of comparable state employees.

     (2)   Benefit costs include state- or employer-paid Social Security contributions, premiums for workers compensation, medical and unemployment insurance, and the state retirement system.

     (3)   Costs for merit and incentive awards based on performance, providing the awards are part of a program

1 January 2019
30 September 2022

US_00000023

October 2018
available and consistent with those offered to similar state government positions.

(4)   Overtime required by Fair Labor Standards Act (FLSA), based on the work schedule authorized by the state.  When operational requirements or personnel circumstances dictate additional staffing in support of the mission, overtime may be authorized as specified in the appendix to satisfy minimum staffing requirements.

Overtime may be approved on an exception basis (filling for sick or annual leave, emergency, or training, etc.).

b.  Costs for travel expenses and per diem, at a rate consistent with state travel regulations, for performing activities authorized under that appendix or separate agreement away from their home office.

c.  Costs of training for qualification in accordance with established work center requirements, and as authorized in each appendix.

d.  Costs for facilities, equipment and supplies required or reasonably necessary to perform the activities specified or described in each appendix or separate agreement.

e.  Any other charges or activities not otherwise authorized require prior approval by the OPR-PM or as specified in that appendix.

**Section 305.    Advance Agreements on the Allowability of Costs.**

a.      No cost incurred by the Grantee that is contrary to any valid restriction, limitation, or instruction contained in any Budget and/or Financial Plan under this MCA shall be allowable.

b.      The costs of compensation for personnel services, including fringe benefits, but not limited to, the costs of premiums or self-insurance for workmen's compensation, unemployment compensation, and State sponsored life/health insurance, plus the cost of the state's contribution to retirement benefits, shall be allowable as specified in current PARC policy, NGR 5-1 Chapter 5 or successor CNGB I & M, **and 2 CFR §200.431.**

**Section 306.    Unauthorized Activities/Charges and Costs.**

Unallowable, unauthorized activities and costs/charges.  In addition to the unauthorized activities and charges that may be identified in each specific Appendix, **unallowable costs identified in General Provisions for Selected Items of Cost, as specified in 2 CFR §200.420 through 2 CFR §200.475, shall be unauthorized for reimbursement.**

5

October 2018

## ARTICLE IV – FUNDING LIMITATIONS

**Section 401.     Funding  Limitations**

a.     The Annual Funding Program (AFP) limitation amount for NGB for any fiscal year is specified in the appendices.  Increases/decreases to the AFP in a particular FY will be by a bilateral modification.  The AFP amount of an appendix for each FY will be reflected in the award/appendix for that particular fiscal year.

b.     If, at any time within the fiscal year, the Grantee determines that NGB's share of allowable costs, as specified in the appendices, has reached the amount reflected in the appendix or determines that the total amount of NGB's share of allowable costs exceeds 90% of the amount reflected in the appendix, the Grantee will notify the USPFO in writing.  The notice shall state the total estimated amount of NGB's share of allowable costs and the amount of the Grantee's share of allowable costs necessary to complete a fiscal year.

c.     The addition of program income to the funds obligated in a cooperative agreement will not require an increase in the federal funding limitation.

d.     Within its discretion, NGB may unilaterally increase the maximum funding limitation at any time.

e.     The Grantee shall have no obligation to incur costs which exceed NGB's share of the maximum funding limitation.

**Section 402.     Method of Funding.**

a.     MCA Appendices will be either incrementally or fully funded annually, subject to the availability of funds.

b.     The annual funding of MCA Appendices will be in accordance with current PARC policy, NGR 5-1 Chapter 3 or successor CNGB I & M and as specified in the Budget Requirements/Financial Plan Requirements sections of each Appendix.

**Section 403.     Budgets/Financial Plans.**

a.     Budgets/Financial Plans Requirements are specified in each Appendix.

**Section 404.     Limitation on the Availability of Funds For State Obligation.**

Funds provided by NGB for awards made under this MCA for any Fiscal Year are available for obligation (as the term "obligation" is defined in **2 CFR 200 §200.71**, specified in current PARC policy, NGR 5-1 or successor CNGB I & M) by the State only in that Fiscal Year.  Allowable costs must be incurred in the same fiscal year as the funding.

6

1 January 2019
30 September 2022

US_00000025

October 2018

## ARTICLE V - PAYMENT

**Section 501.     General.**

There are only two payment methods authorized in the execution of this MCA, the reimbursement method and the advance method.

**Section 502.  Payment by the Reimbursement Method.**

Reimbursement method payments shall be according to procedures established by the Defense Finance and Accounting Service (DFAS), DoD Financial Management Regulation 7000.14R Volumes 11A and 11B, current PARC policy, NGR 5-1 Chapter 11 or successor CNGB I & M, **and 2 CFR §200.305.**

**Section 503.     Payment by Advance Method.**

The advance payment method shall be according to procedures established in current PARC policy, NGR 5-1 Chapter 11 or successor CNGB I & M, and  **2 CFR §200.305.**

**Section 504.  Direct Federal Payment of State Obligations.**

In no event, shall the USPFO make direct payment to a state contractor, state employee, contractor employee, or state vendor for any costs incurred by the state under this MCA.

**Section 505.  Interest.**

The amount of interest due the United States on funds advanced to the state or interest due the state shall be determined and paid in accordance with 31 U.S.C. § 6503 and the items of the Cash Management Improvement Act Agreement in effect between the State and U.S. Treasury and regulations as issued by the U.S. Department of Treasury and the Department of Defense, as amended. For interest on advance payments see 31 U.S.C. 6503, 32 CFR. § 33.21, **and 2 CFR §200.305.**

7

1 January 2019
30 September 2022

US_00000026

October 2018

## ARTICLE VI – DEFINITIONS

**Section 601.    Army National Guard and Air National Guard Cooperative Agreements.**

Army National Guard (ARNG) and Air National Guard (ANG) Cooperative Agreements mean any agreements entered into by the Department of Defense, National Guard Bureau, with the states, funded by Department of Defense appropriations for the Army National Guard and Air National Guard, for construction, minor construction, distance learning, maintenance, repair, or operation of facilities, operations of the Army National Guard and Air National Guard, and for other programs authorized and directed by Congress or the Department of Defense to be performed by the states and the National Guard Bureau.

**Section 602.    Air National Guard.**

The Air National Guard (ANG) means that part of the organized militia of the several States and Territories, Puerto Rico, and the District of Columbia, active and inactive, that--

a.    is an air force;

b.    is trained, and has its officers appointed, under the sixteenth clause of section 8, article 1 of the Constitution;

c.    is organized, armed, and equipped wholly or partly at federal expense; and

d.    is federally recognized (32 USC § 101).

**Section 603.    Army National Guard.**

The Army National Guard (ARNG)   means that part of the organized militia of the several States and Territories, Puerto Rico, and the District of Columbia, active and inactive, that --

a.    is a land force;

b.    is trained, and has its officers appointed, under the sixteenth clause of section 8, article I of the Constitution.

c.    is organized, armed, and equipped wholly or partly at federal expense; and

d.    is federally recognized (32 U.S.C. § 101).

**Section 604.    Chief, National Guard Bureau.**

The Chief, National Guard Bureau means the head of the National Guard Bureau or his/her designee.

**Section 605.    Cooperative Agreement Program Manager.**

An individual appointed by the USPFO, in coordination with TAG/ANG Unit command, as the Federal CA Program Manager (CA PM) to act for the ARNG / ANG in all matters relating to an MCA Appendix.

**Section 606.    Equipment. (Non-military).**

For the purposes of this MCA and consistent with the definition at **2 CFR §200.33**, equipment is tangible, non-expendable, personal property having a useful life of more than one year and an acquisition cost of $5000 or more per unit, purchased for the performance of this MCA.  Use and disposal of equipment shall comply with the requirements of current PARC policy, NGR 5-1 Chapter 8 or successor CNGB I & M, **and 2 CFR 200 §200.313**.

8

1 January 2019
30 September 2022

US_00000027

October 2018

**Section 607.    Fiscal Year.**

Fiscal Year (FY) means the federal FY that runs from October 1 to September 30.

**Section 608.    Government Furnished Property (GFP) or Government Furnished Equipment (GFE).**

Government furnished property/equipment is property in the possession of, or directly occupied by, the Government and subsequently made available to the grantee (e.g. facilities, materials, special tools, special test equipment, installation property, GSA vehicles and "agency peculiar" equipment).

**Section 609.    Grantee.**

The State **(2 CFR §200.90)** or local government **(2 CFR §200.64)** responsible for the performance and administration of this award.

**Section 610.    Grants Officer/Grantor.**

Grants Officer or Grantor shall mean an individual appointed by the NGB Head of Contracting Activity (HCA) authorized to provide approvals, receive reports, modify or change the terms of the MCA, provide funds under the MCA or take any other action for NGB under this MCA except for deciding appeals of a dispute under this MCA (as provided in Section 1203) and any other action delegated to a specific person by this MCA, an appendix or separate agreement. For purposes of this agreement, the Grants Officer is the USPFO of the respective State/Territory.

**Section 611.    Grants Officer Representative.**

Grants Officer Representative (GOR) means a representative of the Grants Officer acting within the limits of his or her authority as delegated, in writing, by the Grants Officer.    If the Grants Officer designates a GOR, the Grantee will receive a copy of the written designation. It will specify the extent of the GOR's authority to act on behalf of the Grants Officer. The GOR is not authorized to make commitments or changes that will affect terms or conditions of the MCCA or an appendix.

**Section 612.    In-Kind Assistance.**

In-Kind Assistance is the transfer of supplies or services by NGB to the state in lieu of funds, to satisfy in whole or in part, NGB's obligation of assistance support to the state. IKA will be the fair market value at the time of the contribution.

**Section 613.    Military Equipment.**

Military Equipment is federal equipment, used by the Army and Air National Guard to carry out military missions (i.e. combat, or homeland defense/security), listed in the ARNG Modified Table of Organization Equipment (MTOE), Table of Distribution and Allowances (TDA) or AF Designed Operational Capability (DOC). Military equipment cannot be issued/transferred to the State for the purpose of MCA execution.

**Section 614.    National Guard Bureau.**

The National Guard Bureau (NGB) is a joint activity of the Department of Defense pursuant to Section 10501, Title 10 United States Code (U.S.C.). The Chief, NGB, is under the authority, direction, and control of the Secretary of Defense. The Secretary normally exercises authority, direction, and control through the Secretaries of the Army and the Air Force for matters pertaining to their responsibilities in law or DoD policy. The Chief, NGB, is a principal advisor to the Secretary of Defense through the Chairman of the Joint Chiefs of Staff on matters involving non-federalized National Guard forces and through other DoD officials on matters as in DoD Directive 5105.77, 30 Oct 2015, or as determined by the Secretary of Defense.

1 January 2019
30 September 2022

W912TF-19-2-1000

US_00000028

October 2018

### Section 615.    Operating Materials and Supplies.

Items purchased, provided, and consumed in normal operations in support of this MCA, its appendices or separate agreements which incorporate the MCA.

### Section 616.    Operation and Maintenance Activities.

Operation and Maintenance (O&M) Activities mean and include, but are not limited to actions by the state, through employment by the state, by contract or hire, of sufficient personnel, acquisition by contract of supplies or services, or other necessary actions, to perform the services, tasks, or activities within the scope of this MCA which are properly charged to an Operations and Maintenance appropriation.

### Section 617.    State.

Any of the several states of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, or any agency or instrumentality of a state exclusive of local governments, **and consistent with the definition at 2 CFR §200.90.**

### Section 618.    Territory.

Territory means any Territory.  However, for purposes of laws relating to the militia, the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States.  "Territory" includes Guam and the Virgin Islands (32 U.S.C. § 101).

### Section 619.    The Adjutant General.

a.    The Adjutant General (TAG) is the head of the State, Commonwealth or Territory's Military Department, appointed by the Governor or otherwise determined in accordance with the State, Commonwealth or Territory's law or policy.

b.    TAG receives funds, property, and accounts for all expenditures and property acquired through this MCA, and makes returns and reports concerning those expenditures and that property, as required by this MCA.

### Section 620.    United States Property and Fiscal Officer. (Grantor)

a.    The United States Property and Fiscal Officer (USPFO) is the qualified commissioned officer of the Army National Guard or the Air National Guard, as the case may be, designated by the Chief, National Guard Bureau, to be the United States Property and fiscal Officer of a State or Territory.

b.    The USPFO receives and accounts for all funds and property of the United States, in the possession of the National Guard for which he/she is property and fiscal officer, and makes returns and reports concerning those funds and that property, as required by the Secretary concerned. (32 U.S.C. § 708).

### Section 621.    Unit.

The Unit includes Air National Guard (ANG) flying Groups and Wings, Combat Communication Flights and Squadrons, Engineering Installation Flights and Squadrons, and Combat Readiness Training Centers (CRTC).

W912TF-19-2-1000

1 January 2019
30 September 2022

US_00000029

October 2018

## ARTICLE VII – GENERAL PROVISIONS

**Section 701.    Term of Agreement.**

    a.  The terms of this MCA remain in effect until changed.

    b.  The performance period for each appendix to the MCA is the Federal Fiscal Year in which that award is made, except as specified in the award itself (e.g. the performance period for many Youth Challenge awards reflects the state's academic year).

**Section 702.    Sole Benefit.**

    This MCA and associated appendices are intended for the sole benefit of NGB and the Grantee and are not intended to create any other beneficiaries.

**Section 703.    Modifications.**

    This MCA may be modified only by a written instrument signed by the parties hereto.  Appendices may be modified separately.  However, no appendix modification may modify this MCA by reference.

**Section 704.    Successors and Assigns.**

    This MCA and associated appendices may not be assigned by a party without the express written consent of the other party.  All covenants made under this MCA shall bind and take effect to the benefit of any successors and assigns of the parties whether or not expressly assumed or acknowledged by such successors or assigns.

**Section 705.    Entire Agreement.**

    This MCA and each associated appendix forms the entire agreement between the parties as to scope and subject matter of this MCA.  All prior discussions and understandings concerning the scope and subject matter are superseded and incorporated by this MCA and each associated appendix.

**Section 706.    Severability.**

    If any provision of this MCA is held judicially invalid, the remainder of the MCA shall continue in force and effect to the extent not inconsistent with such holding.

**Section 707.    Waiver of Breach.**

    If a party waives enforcement of any provision of this MCA upon any event of breach by the other party, the waiver shall not automatically extend to any other or future events of breach.

**Section 708.    Notices.**

    Any notice, transmittal, approval, or other official communication made under this MCA shall be in writing and shall be delivered by hand, email, facsimile transmission, or by mail to the other party at the address or facsimile transmission telephone number set forth below, or at such other address as may be later designated:

| | |
|---|---|
| NGB | BRIAN C. ELBERT, Col, USAF, USPFO for New Hampshire, 1 Minutemant Way, Concord, NH 03301-5607<br>E-mail: brian.c.elbert.mil@mail.mil |
| Grantee | DAVID J. MIKOLAITIES, BG, The Adjutant General, 4 Pembroke Road, Concord, NH 03301-5607<br>E-mail: david.j.mikolaities.mil@mail.mil |

1 January 2019
30 September 2022

W912TF-19-2-1000

US_00000030

October 2018

**Section 709.    Execution.**

This MCA may be executed in several counterparts, each of which shall be deemed an original.  Subsequent execution of any or all Appendices shall not affect the legality or enforceability of this MCA.

**Section 710.    Conflict of Interest.**

The Grantee shall insure that its employees are prohibited from using their positions for a purpose that is or gives the appearance of being motivated by a desire for private gain for themselves or others.

**Section 711.    Access to and Retention of Records.**

The Grantee shall afford any authorized representative of NGB, the Department of Defense, or the Comptroller General access to and the right to examine all records, books, papers, and documents ("Records") that are within the Grantee's custody or control and that relate to its performance under this MCA, associated appendices and separate agreements.  The Grantee shall retain all such records intact in a form, if not original documents, as may be approved by NGB for at least ten (10) years following closeout of that award.

**Section 712.    Change of Circumstances.**

Each party shall promptly notify the other party of any legal impediment, change of circumstances, pending litigation, or any other event or condition that may adversely affect the party's ability to carry out any of its obligations under this MCA.

**Section 713.    Liability and Indemnity.**

Except as stated in section 716, nothing in this MCA or an associated appendix shall be construed as an indemnification by one party or the other for liabilities of a party or third persons for property loss or damage, or for death or personal injury arising out of and during performance of the activities supported by this MCA and associated appendices.  Any liabilities or claims for property loss or damage or for death or personal injury by a party or its agents, employees, contractors or (assigns) or by third persons, arising out of and during the performance of supported activities shall be determined according to applicable law.

**Section 714.    Reports.**

In addition to any financial or other reports required by the terms of this MCA, NGB may require the State to prepare reports or provide information relating to this MCA and/or one or more associated appendices.  The state agrees to provide the reports within a reasonable time of request and in such detail as may be required.

**Section 715.    Special State Requirements.**

Changes to established requirements of this MCA made necessary by governing State statutes will be processed in accordance with current PARC policy, NGR 5-1 Chapter 3 or successor CNGB I & M, for approval by NGB.  Upon approval, a statement of alterations or changes, along with justification, shall be attached to this MCA and will be considered a part thereof.  (If none, state NONE.)

**Section 716.    Government Furnished Equipment (GFE).**

In addition to the Liability and Indemnity provisions in section 713, nothing in this MCA shall be construed as an indemnification by the United States of the State, its employees, agents, or third persons, for liability with respect to any and all claims, including, but not limited to: (1) claims for damages; and (2) claims for reimbursement arising from property loss, personal injury or accident damage related to the use, care, or operation of GFE.  The Grantee's liability for lost or damaged GFE will be in accordance with applicable State laws. (See current PARC policy, NGR 5-

1 January 2019
30 September 2022

US_00000031

October 2018

1 Chapter 8 or successor CNGB I & M.) In the event that State law does not authorize indemnification, GFE should not be provided.

## ARTICLE VIII – APPLICABLE LAWS AND REGULATIONS

**Section 801.   Applicable Law.**

This MCA is incidental to the implementation of a Federal program.  Accordingly, this MCA and associated appendices shall be governed by and construed according to federal law as it may affect the rights, remedies, and obligations of the United States.

**Section 802.   Governing Regulations.**

**Title 2 Code of Federal Regulations (CFR) Part 200,** current PARC policy, NGR 5-1 or successor CNGB I & M, are hereby incorporated into this MCA by reference as if fully set forth herein and shall govern this Agreement. Attachment A consists of those provisions of part 200 which are terms & conditions commonly applicable to NGB assistance instruments.

**Section 803.   Nondiscrimination.**

The Grantee covenants and agrees that no person shall be subject to discrimination or denied benefits in connection with the State's performance under the MCA.  Accordingly, and to the extent applicable, the Grantee covenants and agrees to comply with the following national policies prohibiting discrimination:

a.      On the basis of race, color or national origin, in Title VI of the Civil Rights Act of 1964 (42 U.S.C. Section 2000d et seq.), as implemented by DoD regulations at 32 CFR Part 195.

b.      On the basis of race, color or national origin, in Executive Order 11246 as implemented by Department of Labor regulations at 41 CFR Chapter 60.

c.      On the basis of sex or blindness, in Title IX of the Education Amendments of 1972 (20 U.S.C. Section 1681, et seq.), as implemented by DoD regulations at 32 CFR Part 196.

d.      On the basis of age, in The Age Discrimination Act of 1975 (42 U.S.C. Section 6101, et seq.), as implemented by Department of Health and Human Services regulations at 45 CFR Part 90.

e.      On the basis of handicap, in Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), as implemented by Department of Justice regulations at 28 CFR part 41 and DoD regulations at 32 CFR Part 56.

**Section 804.   Lobbying.**

a.      The state covenants and agrees that it will not expend any funds appropriated by Congress to pay any person for influencing or attempting to influence an officer or employee of any agency, or a Member of Congress in connection with any of the following covered federal actions.  The awarding of any federal contract; the making of any federal grant; the making of any federal loan; the entering into of any CA; and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or Cooperative Agreement.

b.      The Final Rule, New Restrictions on Lobbying, issued by the Office of Management and Budget and the Department of Defense (32 CFR Part 28) to implement the provisions of Section 319 of Public Law 101-121 (31 U.S.C. Section 1352) is incorporated by reference and the state agrees to comply with all the provisions thereof, including any amendments to the Interim Final Rule that may hereafter be issued.

**Section 805.   Drug-Free work Place.**

13

W912TF-19-2-1000

October 2018

The Grantee covenants and agrees to comply with the requirements regarding drug-free workplace requirements in of 32 CFR Part 26, which implements Section 5151-5160 of the Drug-Free Workplace act of 1988 (Public Law 100-690, Title V, Subtitle D; 41 U.S.C. 701, et seq.).

**Section 806.   Environmental Protection.**

a.   The Grantee covenants and agrees that its performance under this Agreement shall comply with:

(1)   The requirements of Section 114 of the Clean Air Act (42 U.S.C. Section 7414);
(2)   Section 308 of the Federal Water Pollution Control Act (33 U.S.C. Section 1318), that relates generally to inspection, monitoring, entry reports, and information, and with all regulations and guidelines issued thereunder;
(3)   The Resources Conservation and Recovery Act (RCRA);
(4)   The Comprehensive Environmental Response, Compensation and Liabilities Act (CERCLA);
(5)   The National Environmental Policy Act (NEPA);
(6)   The Solid Waste Disposal Act (SWDA));
(7)   The applicable provisions of the Clean Air Act (42 U.S.C. 7401, et seq.) and Clean Water Act (33 U.S.C. 1251, et seq.), as implemented by Executive Order 11738 and Environmental Protection Agency (EPA) rules at 40 CFR Part 31;
(8)   To identify any impact this award may have on the quality of the human environment and provide help as needed to comply with the National Environmental Policy Act (NEPA, at 42 U.S.C. 4321, et seq.) and any applicable federal, state or local environmental regulation.

b.   In accordance with the EPA rules, the parties further agree that the Grantee shall also identify to the awarding agency (NGB) any impact this award may have on:

(1)   The quality of the human environment, and provide help the agency may need to comply with the National Environmental Policy Act (NEPA, at 42 U.S.C 4321, et seq.) and to prepare Environment Impact Statements or other required environmental documentation.  In such cases, the recipient agrees to take no action that will have an adverse environmental impact (e.g., physical disturbance of a site such as breaking of ground) until the agency provides written notification of compliance with the environmental impact analysis process.
(2)   Flood-prone areas, and provide help the agency may need to comply with the National Flood Insurance Act of 1968 and Flood Disaster Protection Act of 1973 (42 U.S.C. 4001, et seq.), which require flood insurance, when available, for federally assisted construction or acquisition in flood-prone areas.
(3)   Coastal zones, and provide help the agency may need to comply with the Coastal Zone Management Act of 1972 (16 U.S.C. 1451, et seq.), concerning protection of U.S. coastal resources.
(4)   Coastal barriers, and provide help the agency may need to comply with the Coastal Barriers Resource Act (16 U.S.C. 3501 et seq.), concerning preservation of barrier resources.
(5)   Any existing or proposed component of the National Wild and Scenic Rivers System, and provide help the agency may need to comply with the Wild and Scenic Rivers Act of 1968 (16 U.S.C. 1271 et seq.).
(6)   Underground sources of drinking water in areas that have an aquifer that is the sole or principal drinking water source, and provide help the agency may need to comply with the Safe Drinking Water Act (42 U.S.C 300H-3).

**Section 807.   Use of United States Flag Carriers.**

a.   The state covenants and agrees that travel supported by U.S. Government funds under this agreement shall use U.S.-flag air carriers (air carriers holding certificates under 49 U.S.C. 41102) for international air transportation of people and property to the extent that such service is available, in accordance with the International Air Transportation Fair Competitive Practices Act of 1974 (49 U.S.C. 40118) and the inter-operative guidelines issued by the Comptroller General of the United States in the March 31, 1981, amendment to Comptroller General Decision B138942.

b.   The state agrees that it will comply with the Cargo Preference Act of 1954 (46 U.S.C. Chapter 553), as implemented by Department of Transportation regulation at 46 CFR 381.7, and 46 CFR 381.7(b).

US_00000033

October 2018

**Section 808.    Debarment and Suspension.**

**Non-federal entities and contractors are subject to the non-procurement debarment and suspension regulations implementing Executive Orders 12549 and 12689, 2 CFR part 180. These regulations restrict awards, subawards, and contracts with certain parties that are debarred, suspended, or otherwise excluded from or ineligible for participation in Federal assistance programs or activities.** The grantee agrees to comply with the DOD implementation of 2 CFR Part 180 (at 2 CFR Part 1125) by checking the Excluded Parties List System (EPLS) at the current OMB website to verify contractor eligibility to receive contracts and subcontracts resulting from this Agreement.  The grantee and subrecipients shall not solicit offers from, nor award contracts to contractors listed in EPLS.  This verification shall be documented in the grantee and subrecipient contract files, and shall be subject to audit by the grantor and Federal/State audit agencies

**Section 809.    Buy American Act.**

The state covenants and agrees that it will not expend any funds appropriated by Congress without complying with The Buy American Act (41 U.S.C.10a et seq.).  The Buy American Act gives preference to domestic end products and domestic construction material.  In addition, the Memorandum of Understanding between the United States of America and the European Economic Community (EEC) on Government Procurement, and the North American Free Trade Agreement (NAFTA), provide that EEC and NAFTA end products and construction materials are exempted from application of the Buy American Act.

**Section 810.    Uniform Relocation Assistance and real Property Acquisition Policies**

The state covenants and agrees that it will comply with CFR 49 part 24, which implements the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (42 U.S.C. Section 4601 et seq.) and provides for fair and equitable treatment of persons displaced by federally assisted programs or persons whose property is acquired as a result of such programs.

**Section 811.    Copeland "Anti-Kickback" Act.**

The state covenants and agrees that it will comply with the Copeland "Anti-Kickback" Act (18 U.S.C. Section 874) as supplemented in Department of Labor regulations (29 CFR Part 3).  As applied to this agreement, the Copeland "Anti-Kickback" Act makes it unlawful to induce, by force, intimidation, threat of procuring dismissal from employment, or otherwise, any person employed in the construction or repair of public buildings or public works, financed in whole or in part by the United States, to give up any part of the compensation to which that person is entitled under a contract of employment.

**Section 812.    Contract Work Hours and Safety Standards Act.**

The  state covenants and agrees that it will comply with Sections 103 and 107 of the Contract Work Hours and Safety Standards Act (40 U.S.C. Sections 3701-3708) as supplemented by Department of Labor regulations (29 CFR Part 5).  As applied to this agreement, the Contract Work Hours and Safety Standards Act specifies that no laborer or mechanic doing any part of the work contemplated by this agreement shall be required or permitted to work more than 40 hours in any workweek unless paid for all additional hours at not less than 1.5 times the basic rate of pay.

**Section 813.  System for Award Management and Data Universal Numbering Requirements**

The Grantee covenants and agrees to comply with the System for Award Management (SAM) and Data Universal Numbering Requirements (DUNS) as indicated below:
a.  Requirement for SAM.  You as the recipient must maintain the currency of your information in SAM until you submit the final financial report required under this Agreement or receive the final payment, whichever is later.  This requires that you review and update the information at least annually after the initial registration, and more frequently if required by changes in your information or another award term.
b.  Requirement for DUNS Numbers.  If you are authorized to make subawards under this Agreement, you:

15

1 January 2019
30 September 2022

US_00000034

October 2018

(1) Must notify potential subrecipients that no entity (see definition in paragraph (c) of this Agreement term) may receive a subaward from you unless the entity has provided its DUNS number to you; and

(2) May not make a subaward to an entity unless the entity has provided its DUNS number to you.

(3) Definitions.  For purposes of this Agreement:

(a) SAM means the official U.S. Government system that consolidated the capabilities of CCR and EPLS. There is NO fee to register in SAM.  Entities may register at no cost at the current OMB website.  Additional information about registration procedures, updating your recipient account, searching records, as well as user guides and helpful hints may be found at the SAM website.

1. If you had an active record in CCR, you have an active record in SAM. You do not need to do anything in SAM at this time, unless a change in your business circumstances requires updates to your Entity record(s) in order for you to be paid or to receive an award or you need to renew your Entity(s) prior to its expiration. SAM will send notifications to the registered user via email 60, 30, and 15 days prior to expiration of the Entity. To update or renew your Entity records(s) in SAM you will need to create a SAM User Account and link it to your migrated Entity records. You do not need a user account to search for registered entities in SAM by typing the DUNS number or business name into the search box.

(b) Data Universal Numbering System (DUNS) number means the nine-digit number established and assigned by Dun and Bradstreet, Inc. (D&B) to uniquely identify business entities. A DUNS number may be obtained from D&B by telephone (currently 866-705-5711) or the internet (currently at http://fedgov.dnb.com/webform).

(c) Entity, as it is used in this award term, means all of the following, as defined at 2 CFR Part 25, Subpart C:

1. A Governmental organization, which is a State, local Government, or Indian Tribe;

2. A foreign public entity;

3. A domestic or foreign nonprofit organization;

4. A domestic or foreign for-profit organization; and

5. A Federal Agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

(4) Subaward:

(a) This term means a legal instrument to provide support for the performance of any portion of the substantive project or Program for which you received this Agreement and that you as the recipient award to an eligible subrecipient.

(b) The term does not include your procurement of property and services needed to carry out the project or Program.

(c) A subaward may be provided through any legal Agreement, including an Agreement that you consider a contract.

(5) Subrecipient means an entity that:

(a) Receives a subaward from you under this Agreement; and Is accountable to you for the use of the Federal funds provided by the subawards

## Section 814.  Reporting Subawards and Executive Compensation

The Grantee covenants and agrees to comply with the Reporting Subawards and Executive Compensation requirements indicated below:

a. Reporting of first-tier subawards.

1. Applicability. Unless you are exempt as provided in paragraph d. of this award term, you must report each action that obligates $25,000 or more in Federal funds that does not include Recovery funds (as defined in section 1512(a)(2) of the American Recovery and Reinvestment Act of 2009, Pub. L. 111-5) for a subaward to an entity (see definitions in paragraph e. of this award term).

2. Where and when to report.

i. You must report each obligating action described in paragraph a.1. of this award term to http://www.fsrs.gov.

ii. For subaward information, report no later than the end of the month following the month in which the obligation was made. (For example, if the obligation was made on November 7, 2010, the obligation must be reported by no later than December 31, 2010.)

3. What to report. You must report the information about each obligating action that the submission instructions posted at http://www.fsrs.gov specify.

b. Reporting Total Compensation of Recipient Executives.

16

US_00000035

October 2018

1. Applicability and what to report. You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if--

i. the total Federal funding authorized to date under this award is $25,000 or more;

ii. in the preceding fiscal year, you received--

(A) 80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and

iii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report executive total compensation described in paragraph b.1. of this award term:

i. As part of your registration profile at http://www.ccr.gov.

ii. By the end of the month following the month in which this award is made, and annually thereafter.

c. Reporting of Total Compensation of Subrecipient Executives.

1. Applicability and what to report. Unless you are exempt as provided in paragraph d. of this award term, for each first-tier subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if--

i. in the subrecipient's preceding fiscal year, the subrecipient received--

(A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and

(B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act (and subawards); and

ii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report subrecipient executive total compensation described in paragraph c.1. of this award term:

i. To the recipient.

ii. By the end of the month following the month during which you make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (i.e., between October 1 and 31), you must report any required compensation information of the subrecipient by November 30 of that year.

d. Exemptions

If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

i. Subawards, and

ii. The total compensation of the five most highly compensated executives of any subrecipient.

e. Definitions. For purposes of this award term:

1. Entity means all of the following, as defined in **2 CFR Part 200**:

i. A Governmental organization, which is a State, local government, or Indian tribe;

ii. A foreign public entity;

iii. A domestic or foreign nonprofit organization;

iv. A domestic or foreign for-profit organization;

v. A Federal agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

2. Executive means officers, managing partners, or any other employees in management positions.

3. Subaward:

i. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

17

1 January 2019
30 September 2022

US_00000036

October 2018

ii. The term does not include your procurement of property and services needed to carry out the project or program.

iii. A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

4. Subrecipient means an entity that:

i. Receives a subaward from you (the recipient) under this award; and

ii. Is accountable to you for the use of the Federal funds provided by the subaward.

5. Total compensation means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 CFR 229.402(c)(2)):

i. Salary and bonus.

ii. Awards of stock, stock options, and stock appreciation rights. Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

iii. Earnings for services under non-equity incentive plans. This does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives, and are available generally to all salaried employees.

iv. Change in pension value. This is the change in present value of defined benefit and actuarial pension plans.

v. Above-market earnings on deferred compensation which is not tax-qualified.

vi. Other compensation, if the aggregate value of all such other compensation (e.g. severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property) for the executive exceeds $10,000.

1 January 2019
30 September 2022

US_00000037

October 2018

## ARTICLE IX – PROCUREMENT

**Section 901.    State Contracts.**

The Grantee's acquisition of goods and services by the State in performance of this MCA shall be according to applicable State contracting procedures, standards and procedures contained and cited in **2 CFR §200.317**

**Section 902.    State Contract Flow-down.**

Subject to existing contracts, the Grantee is required to insert the substance of provisions of article VIII in contracts issued under this MCA, unless state laws or regulations offer more protection.

W912TF-19-2-1000

1 January 2019
30 September 2022

US_00000038

October 2018

# ARTICLE X – PROPERTY

**Section 1001.  Equipment.**

a.     Equipment purchased by the Grantee under the terms of this agreement becomes the property of the state and will be managed, used, and disposed of in accordance with current PARC policy, NGR 5-1  Chapter 8 or successor CNGB I & M, and **2 CFR §200.313**.

b.     Equipment purchased by the federal government, including equipment acquired specifically for a National Guard Cooperative Agreement, vests in the Federal Government.  This equipment shall be managed, used, and accounted for as provided in current PARC policy, NGR 5-1 Chapter 8 or successor CNGB I & M, and **2 CFR 200.313(d)**.

c.     Equipment purchased by the federal government and issued to the state is Government Furnished Equipment (GFE).  The title to GFP/GFE vests in the federal government and cannot be transferred to the state and therefore cannot be considered as In-Kind Assistance (IKA).

**Section 1002.  Operation Materials and Supplies.**

a.     Items to be consumed in normal operations purchased by the state under the terms of this agreement become the property of the State and will be managed and disposed of in accordance with current PARC policy, NGR 5-1 Chapter 8, or successor CNGB I & M, and **2 CFR Part 200**.

b.     Supplies purchased by the federal government shall be managed, used, and accounted for as provided in current PARC policy, NGR 5-1 Chapter 8, or successor CNGB I & M, and **2 CFR §200.314**.  State use of federal supplies and materials may be considered as IKA.

W912TF-19-2-1000

1 January 2019
30 September 2022

US_00000039

October 2018

## ARTICLE XI – LEGAL AUTHORITY

**Section 1101.  Legal Authority.**

The Grantee represents and warrants that it is under no existing or foreseeable legal disability that would prevent or hinder it from fulfilling the terms and conditions of this MCA.  The Grantee shall promptly notify NGB of any legal impediment that arises during the term of this MCA that may prevent or hinder the state's fulfillment of its obligations under this MCA.

**Section 1102.  Opinion of Counsel.**

Concurrent with its execution of this MCA, the Grantee shall furnish an opinion of counsel by the highest legal officer of the State, or his or her designee, that:

a.    The Grantee has the requisite authority to enter into this MCA;

b.    The Grantee can make the warranty set forth in Section 1101 above;

c.    The Grantee is empowered to assume the responsibilities and obligations the State proposes to undertake under this MCA;

d.    The provisions of the MCA intended to secure the interests of NGB are enforceable according to their terms;

e.    The execution of this MCA has been duly authorized by the state and,

f.    That the individual signing this MCA on behalf of the State has the requisite legal authority to bind and obligate the state to the terms and conditions of this MCA.

21

October 2018

## ARTICLE XII – TERMINATION, ENFORCEMENT, CLAIMS, DISPUTES RESOLUTION, AND APPEALS

**Section 1201.  Termination.**

This MCA may be terminated by either party according to the terms and conditions of **2 CFR § 200.339**, current PARC policy or successor CNGB I & M.

**Section 1202.  Enforcement.**

NGB may take such actions to enforce the terms of this MCA as may be provided for in and under the terms of current PARC policy or successor CNGB I & M, and **2 CFR §200.338**.

**Section 1203.  Claims, Disputes Resolution and Appeals.**

a.      Any claim made by the Grantee arising out of this MCA shall be presented in writing to the Grants Officer.  The claim shall include: the amount of monetary relief claimed or the nature of other relief requested, the basis for relief, and the documents or other evidence pertinent to the claim.

b.      Claims shall be made within 60 days after the basis of the claim is known or should have been known, whichever is earlier.  It is the state's duty to include in its claim all information needed to demonstrate its timeliness.

c.      Upon receipt of a claim, the Grants Officer shall provide a written decision denying or sustaining the claim, in whole or part, which decision shall include the reason for the action, within 60 days of the date of the receipt of a claim.  The determination shall be final unless appealed by the Grantee pursuant to the provisions of this section.

d.      Alternative Dispute Resolution (ADR).

1.      Policy.  It is NGB policy to try to resolve all issues concerning cooperative agreements at the Grants Officer's level.  Grant Officers are encouraged to use ADR procedures to the maximum extent practicable.

2.      Procedures.  If a Grantee decides to appeal a Grants Officer's decision, the Grants Officer shall encourage the state to enter into ADR procedures.  The ADR procedures to be used shall be agreed to at the time the parties determine to employ them.

e.      Appeals.

1.      Grant Appeal Authority.  The CNGB shall designate a Grants Appeal Authority at the time of receipt of appeal.

2.      Right of Appeal.  The State has the right to appeal a Grants Officer's decision to the Grant Appeal Authority.

3.      Appeal Procedure.

(a)      Notice of appeal.  The TAG may appeal a decision of the Grants Officer within 90 days of receiving that decision, by filing a written notice of appeal to the Grant Appeal Authority and to the grants Officer.

(b)      Appeal file.  Within 30 days of receiving the notice of appeal, the Grants Officer shall forward to the Grant Appeal Authority and the Grantee the appeal file, which shall include copies of all documents relevant to the appeal.

(c)      Decision.  Any fact-finding or hearing shall be conducted using procedures that the Grant Appeal Authority deems appropriate.

f.      Nothing in this section is intended to limit a Grantee's right to any remedy under the law.

US_00000041

October 2018

## ATTACHMENTS – APPENDICES
### (List All Appendices as Appropriate to the State)

ATTACHMENT A (which is an integral part of this MCA): Provisions required by 2 CFR Part 200

APPENDICES:

| | | |
|---|---|---|
| APPENDIX 1 | ARNG FACILITIES PROGRAMS | W912TF-19-2-1001 |
| APPENDIX 2 | ARNG ENVIRONMENTAL PROGRAMS RESOURCES MANAGEMENT | W912TF-19-2-1002 |
| APPENDIX 3 | ARNG SECURITY COOPERATIVE AGREEMENT | W912TF-19-2-1003 |
| APPENDIX 4 | ARNG ELECTRONIC SECURITY SYSTEM (ESS) MANAGEMENT, INSALLATION, OPERATION & MAINTENANCE (MIO & M) | W912TF-19-2-1004 |
| APPENDIX 5 | ARNG COMMAND, CONTROL, COMMUNICATIONS, COMPUTERS, AND INFORMATION MANAGEMENT (C4IM) | W912TF-19-2-1005 |
| APPENDIX 7 | ARNG TRAINING SUPPORT SYSTEM (TSS) PROGRAMS | W912TF-19-2-1007 |
| APPENDIX 10 | ARNG ANTI-TERRORISM PROGRAM COORDINATOR ACTIVITIES | W912TF-19-2-1010 |
| APPENDIX 14 | ARNG ADMINISTRATIVE SERVICES ACTIVITIES | W912TF-19-2-1014 |
| APPENDIX 21 | ANG FACILITIES OPERATIONS AND MAINTENANCE ACTIVITIES | W912TF-19-2-1021 |
| APPENDIX 22 | ANG ENVIRONMENTAL PROGRAM MANAGEMENT | W912TF-19-2-1022 |
| APPENDIX 23 | ANG SECURITY COOPERATIVE AGREEMENT | W912TF-19-2-1023 |
| APPENDIX 24 | ANG  FIRE PROTECTION ACTIVITIES | W912TF-19-2-1024 |
| APPENDIX 40 | ARMY NATIONAL GUARD DISTRIBUTED LEARNING PROGRAM | W912TF-19-2-1040 |

W912TF-19-2-1000

1 January 2019
30 September 2022

US_00000042



NATIONAL GUARD BUREAU
111 SOUTH GEORGE
MASON DRIVE, AHS2
ARLINGTON, VA 22204-1373

24 September 2018

NGB-OPARC-A

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Grants and Cooperative Agreements Policy Letter (GCAPL) 18-08 –
Master Cooperative Agreement (October 2018) and accompanying PARC Policy.

1. This GCAPL implements and accompanies the posting of the NGB Master
Cooperative Agreement (MCA) revised for FY19. This issuance replaces in its
entirety the former version of the Master Cooperative Agreement dated October
2015, and is effective 1 October 2018.

2. The October 2018 MCA has been posted on GKO, and includes Attachment
A thereto, the text of which – as reflected in the date - is unchanged from
2015.

3. As noted in the MCA, PARC Policy reflects a variety of statutory, regulatory
and practice changes which have occurred since the current version of NGR 5-1
was published in May 2010.

4. Questions related to this GCAPL should be directed to NGB PARC-A:  David
F. Shaw 302 326-7338, email: david.f.shaw.civ@mail.mil; or the undersigned:
Joseph A. Wannemacher 207 756-7914, email:
joseph.a.wannemacher.civ@mail.mil.

Joseph A. Wannemacher
NGB Grants and Cooperative Agreements

Distribution (corrected copy – NGB seal)
USPFO
GOR
NGB-JA
NGB-J8

# Attachment 3

October 2015

# APPENDIX 24
# ANG FIRE PROTECTION ACTIVITIES

**Section 2401.  General.**

a.  This Appendix to the Master Cooperative Agreement prescribes the terms, conditions, policy and administrative procedures for the National Guard Bureau's (NGB) federal contribution for the Air National Guard Fire Protection Activities (ANGFPA) Program within the State.

b.  Statement of Facts.  The authorities and provisions set forth in NGR 5-1, National Guard Grants and Cooperative Agreements, are incorporated into this Appendix by reference.

**Section 2402.  Additional Definitions.  (Reserved)**

**Section 2403.  Office of Primary Responsibility.**

a.  The Office of Primary Responsibility for this Appendix is The Civil Engineer (NGB/A7), National Guard Bureau, Air National Guard Readiness Center, 3501 Fetchet Avenue, Andrews AFB, MD 20762-5157.

b.  The Civil Engineer, for the purposes of this Appendix, is a designee of the Chief, National Guard Bureau, and is the individual authorized to make final approval of all Fire Protection Activities Financial Plans and modifications to them and to the language of this Appendix, to authorize distribution and recall of Fire Protection funds to the USPFO, to receive specified accounting reconciliation reports, and to take any other action on behalf of NGB or the Chief, NGB, as specifically reserved under this Appendix for NGB/A7.  Within the Civil Engineer Directorate, the Chief, Emergency Services Branch (NGB/A7XF) acts for The Civil Engineer in the day-to-day administration of the Appendix.

c.  The Federal Technician Fire Chief is responsible for all Appendix matters as the CA Program Manager at the Base. He/she coordinates as necessary with the BCE and Asst USFPO for Air (Fiscal) regarding annual Financial Plan submittals.  **The Fire Chief shall be responsible for participating, as an advisor to the State personnel management team, on matters relating to Collective Bargaining negotiations between the State and the State's Bargaining Unit employees.**

**Section 2404.  Scope of Agreement.**

a.  Scope of Services.

(1)  The Grantee shall provide Aircraft Rescue and Fire Fighting (ARFF) services to installations identified by NGB/A7XF. (Installations include, but are not limited to, ANG Flying Units, Geographically Separated Units (GSUs) and Training Sites).  **Grantees may provide fire protection services with or without an assigned aircraft on a case by case basis approved by NGB/A7 in accordance with DODI 6055.06 and AFI 32-2001 requirements.** Performance of these functions will be accomplished per AFI 32-2001, and ANG Sup 1 to AFI 32-2001, The Fire Protection Operations and Fire Protection Program, herein after referred to as AFI 32-2001 and ANG Sup 1, specifically Attachment 10.  Additional services will provide initial structural, rescue, emergency medical and hazardous materials (HAZMAT) response. The State ANGFPA shall include, but not be limited to, actions by the **Grantee through employment by the State, to hire,** sufficient personnel, to accomplish the following tasks. NGB/A7 will determine the authorized number of personnel for each installation.

1.  Fire protection for all ANG aircraft, facilities and equipment according to applicable Department of Defense (DOD), Air Force and Air National Guard directives or until the unit is mobilized under Federal Law.

W912TF-18-2-1024

1 October 2018
30 September 2022

1

US_00000044

October 2015

    2.  Monitor alarm equipment and initiate action necessary to obtain appropriate response.

    3.  Administrative support for the fire protection operations.

    4.  Other services necessary to provide fire protection for applicable aircraft, facilities and equipment to include:

- Aircraft Emergency Response (in-flight or ground emergencies, barriers, etc.

- Structural Alarm Response - initial response and investigation as a minimum.

- Rescue Operations, including, but not limited to: aircraft egress, equipment, and automobile extraction, facility rescue (dependent upon available staffing and equipment.)

- Medical Services (EMS) – Provide emergency medical response, First Aid/First Responder or emergency medical technician – basic (EMT-B) as a minimum, to be determine by the Fire Chief, not to exceed level of training, and as approved by the local Medical Commander.

- Hazardous Materials (HAZMAT) Response (Operations Level at a minimum, up to the level designated by the Fire Chief).

- Fuel & Hydrazine Spill Response.

- Mutual Aid/Reciprocal Agreements established at the local level.  Technical Rescue (confined space, high and low angle rope, structural collapse, etc) - established at local level.

- Wild Land Fire Fighting (urban-wild land interface only as required to protect ANG facilities) - determined by State requirement.

- Alarm Room Operations - established at local level.

- Air Force Incident Management System (AFIMS) – Fire Department ICS.

- Technical Services – facility inspections, customer training, fire prevention, project plans and construction review, code and criteria review, extinguisher inspection and maintenance, systems inspection assistance, and pre-fire planning for installations, including GSUs, according to NGB/A7 policy.

- Contingency Response (bomb threat, anti-hijacking, terrorist, etc.) - determined at local level.

- Participation in installation exercises and assessments.

- Station duties – to include housekeeping, grounds and vehicle/equipment operator maintenance.

    (2)  Fire fighters are authorized to provide training for all DOD, federal and state personnel within the appropriate certification level.  This applies to home station, RTS and CRTC locations.  Questions regarding this authorization should be addressed to the NGB CA PM.

W912TF-18-2-1024                                                             1 October 2018
<br>                                                               30 September 2022

US_00000045

October 2015

(3)  Fire Department services deemed necessary by the Grantee or local command beyond the scope of services listed above will be supported by State or other locally available funds.

**(4)  NGB/A7 will determine the authorized number of personnel for each installation.  NGB/A7XF may allow on a case-by-case basis, the conversion of up to two authorized positions from firefighter to Assistant Chief in Fire Prevention and Training sections only, to be reimbursed up to the GS10 Step 2 level.**

b.  Performance of Specifications.

(1)  The Grantee shall operate Fire Protection Services in accordance with National Fire Protection Association (NFPA) 1500, 1582, 1561, 1404, 1975, 472, 1581, 1001, 1002 and 1003 Standards.  AFI 32-2001,  Fire Major Vehicle Standby - Vehicle Standby's will be in accordance with Technical Order 00-25-172 (ANG Sup 1) and local policy.

**Section 2405.  Authorized Activities/Charges.**

**a.  The states have the authority to utilize funding that has been validated and funded to administer the fiscal year's Appendix 24 Cooperative Agreement.  NGB/A7XF will not provide any additional funding, except for new hires which will be pro-rated from the start date.  The program is reimbursable and salaries and benefits must be allowable and reasonable.  NGB/A7XF does not fund vacant positions, and excess funds must be returned to NGB/A7XF until the position is filled.**

b.  If a State has a pay freeze or pay cap, a hiring freeze or employee furloughs for like positions throughout the State **then** State ANG FP employees will have corresponding limitations.  Regular overtime that is required by **Fair Labor Standards Act (FLSA)**, based on the work schedule authorized by the State, will be allowed and funded in each budget cycle in accordance with AFI 32-2001 ANGSUP 1 to the extent the funds are available. **The Fire Chief** must notify NGB/A7XF at the start of each fiscal year regarding anticipated excess funds resulting from furloughs, hiring freezes or military members that are deploying in a leave without pay status.

**(1)  Overtime, pursuant to the requirements of the Fair Labor Standards Act (FLSA), will be funded based upon a 56-hour tour of duty.  This is based on 53 hours of scheduled regular time, and three hours of scheduled overtime if the employee meets the Section 207K requirements of the Fair Labor Standards Act.**

c.  When operational requirements or personnel circumstances dictate additional staffing in support of the mission, the Fire Chief can authorize overtime to satisfy minimum staffing requirements.  Overtime may be approved on an exception basis (filling for sick or annual leave, emergency, or training classes, etc.) as identified in AFI 32-2001 and ANG Sup 1, Attachment 10.

d.  Costs for initial physical, annual physical, medical evaluation and required tests.

e.  Costs for inoculations and equipment required for an individual to meet the Infectious Disease Control and Occupational Safety and Health programs.

f.  Costs for Station Work Uniforms meeting the requirements of AFI 32-2001 and ANG Sup 1, Attachment 10.

g.  Costs for athletic apparel when the Fire Department has a structured physical fitness program as required in NFPA 1583 (must comply with AFI 32-2001 and ANG Sup 1, Attachment 10.

h.  Costs for Personal Protective Equipment.

W912TF-18-2-1024

1 October 2018
30 September 2022

3

US_00000046

October 2015

i.  Travel expenses at a rate consistent with State regulations for Fire Protection personnel performing duty away from their home stations.

**j.  ANGFPA fire departments may provide fees associated with new requirements, Emergency Medical Technician (EMT) – Basic Certification, re-certification of Emergency Medical Technician – Basic, or EMT licenses required by state or federal agencies to include National Registry for Emergency Medical Technician the performance of fire protection activities.**

k.  Costs associated with the upkeep of station work uniforms and bedding materials. (This does not include furniture or mattresses).

l.  ANGFPA support shall only be provided for those facilities and services identified by NGB/A7XF, unless authorized by exception.

**Section 2406.   Unauthorized Activities/Charges.**

a.  ANGFPA funds will not be utilized to purchase firefighting equipment, supplies, and normal operating supplies/items for the fire department without NGB/A7XF approval.

b.  Reimbursement for courses, whether accredited or non-accredited and professional development training not specifically required for performance of position duties covered under this Agreement.

c.  All charges or costs for items/activities not authorized in Section 2405 above shall be submitted to NGB/A7XF for approval prior to expenditure of funds.

**d.  NGB will not reimburse for more than is authorized in Air Force Instruction (AFI) 36-815.  Eligible part-time or uncommon tours of duty employees earn an equivalent of three workweeks of military leave each fiscal year based upon their schedule.  For example, employees with a 53-hour workweek accrue 159 hours of military leave each fiscal year; employees with a 56-hour workweek accrue 168 hours each fiscal year.**

**e.  Meals during regular or overtime hours at regularly scheduled duty location shall not be reimbursed.**

**f.  Reimbursement of monthly or one-time worker's compensation payouts (claims); additional post-retirement costs, such as additional costs associated with post-retirement health insurance; early retirement incentives, such as bonuses or payouts; and, post-retirement monthly payment of vacation or annual leave, shall not be authorized.**

g.  Reimbursement of costs associated with arbitration services, professional or otherwise, in the negotiation and settlement of a grievance or other formal complaint filed by an employee or a group of employees, shall not be authorized **unless request is made to, and approved by NGB/A7XF in advance.**

**h.  Reimbursement of costs incurred by, or associated with, the process of collective bargaining between the State and its employees covered by a Bargaining Unit (a legally organized labor union) for the purposes of negotiating matters involving employment issues, such as general working or safety conditions on the job, job qualifications and the like, shall not be authorized.**

i.  Reimbursement of increased costs relating to employment issues agreed to in a Collective Bargaining Agreement between the State and its employees covered by a Bargaining Unit, such as increases in salaries, benefits, etc., shall not be authorized, **except as outlined in Section 2405a.**  Increases in such costs shall be borne by the State.

W912TF-18-2-1024

1 October 2018
30 September 2022

4

US_00000047

October 2015

    j.   All other charges/activities not authorized in Section 2405 must be approved on a case by case basis by NGB/A7XF prior to execution.

    k.  Costs listed as unallowable/unauthorized in 2 CFR Part 200, Subpart E – Cost Principles, Special Consideration for Selected Items of Cost.

    **l.  Fire fighters are expected to have the appropriate certifications for the duty positions above the grade of fire fighter, when they apply for a new position.  Required certifications to meet established requirements will not be reimbursed after the individual is hired.**

    m.  Reimbursement will not be allowed for any merit salary increase or benefit increase due to certifications.

**Section 2407.  Financial Plan Requirements.**

    a.  Financial Plan Submission.

    (1)  The CA PM shall submit a Financial Plan (Fin Plan) each fiscal year to NGB/A7XF for approval.  The Fin Plan shall list by line item the Fire Protection services to be funded under this Appendix and the amount of that line item for which it expects reimbursement from NGB.

    (2)  The Fin Plan shall be approved before the execution of this Appendix, and shall be submitted for approval as directed to NGB/A7XF for each succeeding fiscal year.

    (3)  The total funded amount of the budget shall be the maximum amount for which NGB is obligated to reimburse the State for the costs of performance of this Appendix.

    (4)  NGB/A7XF may unilaterally increase or decrease the Fin Plan total, the total for any facility or service, or the total of any line item.

    (5)  Any increase to the budget must be approved by NGB/A7XF.  The request shall include an updated Fin Plan reconciliation report as an enclosure.  The request and approval of funds shall follow the procedures in NGR 5-1 and NGB financial guidance.

    (6)  Though the Fire Protection Services Appendix is intended to be 100% federally reimbursed, federal resources for reimbursement are limited.  .  The CA PM should coordinate with NGB/A7XF in establishing salary and benefit levels to ensure that funding will be available.  Other funding sources can supplement the funding of this Appendix but must be tracked and recorded.  Local FM or State additives to the Fire Protection Program are authorized and do not require approval from NGB/A7XF.

    b.  Element of Expense/Investment Codes (EEICs): EEICs will be in accordance with NGB/FM financial guidance for that year.

    c.  Classifications on the Fin Plan will be Assistant Chief, Crew Chief, and Fire Fighter.

**Section 2408.  Appendix Administration.**

    a.  Personnel.

    (1)  ANGFPA employees, work under the day to day supervision of the Base Fire Chief or his/her designee. Supervision will not go outside of the BCE functional area. All State fire fighters will be under a fire fighter or public safety position description, and appropriate State retirement program.

W912TF-18-2-1024

1 October 2018
30 September 2022

5

US_00000048

October 2015

(2)  The Base Fire Chief will be involved in all personnel actions concerning the State employees to include hiring, firing, performance evaluations and other personnel actions.

(3)  Standards of employment of fire fighters shall be in accordance with AFI 32-2001 and ANG Sup 1. Minimum standards for employment in the ANGFPA Fire Fighter Program consist of the following.  Failure to maintain minimum standards may be cause for dismissal.

    1.  Education:  High school diploma or equivalent (GED).

    2.  Minimum Age: 18.

    3.  Physical Fitness and Agility: Separate entry level and annual maintenance programs will be developed at State level with consideration of employee age and required position duties.

    4.  Security Clearance: ANGFPA fire fighters must obtain a favorable background investigation, and have an appropriate clearance to allow access to computer networks and restricted areas in the performance of their duties.

    **5.  State License: All ANGFPA fire fighters are required to possess and maintain a current State driver's license.  ANGFPA fire fighters will meet all training and performance requirements required by Air Force Fire protection Training and pass the performance test.  The fire chief will maintain a current and up-to-date listing of all State employees qualified and certified to operate each vehicle, and provide it to the Grantor (USPFO).**

(4)  Staffing/Vehicles.  The following provides general guidance concerning vehicle response and fire protection staffing levels in support of various levels of mission activity.  The specific staffing of shifts and work schedules is at the discretion of the Fire Chief.  ANG will provide the manning for the Department; it will be up to the Fire Chief to manage the staffing to insure adequate coverage based on mission and circumstances.  Staffing will be provided based on ANGMS 44EF00 as offset by Secretary of Air Force policy letter requiring consideration of other available resources at that specific location.

(5)  Fire fighter staffing will be reduced to directly reflect the level of mission activity below full staffing at the discretion of the Fire Chief.

(6)  Staffing levels for installations located on a civil airport with an FAA Index between A and E with paying passenger carrying (i.e., commercial) aircraft, response will comply with FAA standards (FAR Part 139) during nonmilitary flying hours until such time as one-half hour after the Tower is closed for commercial flights.

b.  Fire fighter Work Schedule: ANGFPA fire fighter work schedules will be locally developed in direct support of the installation mission activity.  Work schedules must comply and funding will be tracked in accordance with the requirements for Fair Labor Standard Acts.  Fire fighters will work a minimum of a 56 hour work week if staffing has been provided to support 24 hour operations.

c.  Training Qualification and Certification Standards:  Minimum certification standards are established for each level of the Air National Guard Aircraft Rescue Fire fighter (ARFF) Program in accordance with the accredited fire fighter certification program defined in AFM 32-2003. The minimum for fighter certification standards by position are contained in AFI 32-2001 and ANG Sup 1, Attachment 10.

(1)  Civilian/Military Certification Equivalents:

    1.  Fire fighter (AFSC 3E731/51: Required DOD Certification [Fire Fighter II, Airport Fire Fighter, HAZMAT Operations, Driver/Operator Pumper, ARFF & Tender].  All certifications must be attained within twelve months of employment, including completion of the DOD Fire Protection School, DoD-sponsored Career Development Courses

W912TF-18-2-1024

1 October 2018
30 September 2022

US_00000049

October 2015

(CDC) or equivalent certification accredited by International Fire Service Accreditation Congress (IFSAC) or national fire service accreditation.

    2.  Crew Chief (AFSC 3E751/71): Required DOD Certification [Those identified above for Airport fire fighter along with Fire Officer I, Fire Instructor I, Fire Inspector I, and HAZMAT Incident Commander].

    3.  Assistant Chief of Operations (AFSC 3E771/91): DOD Certification [Fire Officer III, Fire Instructor II, Fire Inspector II and HAZMAT Incident Command].

    4.  Assistant Chief of Training (AFSC 3E771): Required DOD Certification [Fire Officer III, Fire Instructor III, Fire Inspector II, and HAZMAT Incident Commander].

    5.  Assistant Chief of Prevention (AFSC 3E771): Required DOD Certification [Fire Officer III, Fire Instructor II, Fire Inspector III, and HAZMAT Incident Commander].

    d.  Uniforms/Accouterments.  The following provides guidance concerning uniform standards and wear.

    (1)  Uniform Material Performance:  Station work uniforms shall comply with NFPA 1975, "Standard on Station/Work Uniforms for Fire and Emergency Services" and can be 100% natural fibers (reference Department of Defense Instruction (DODI) 6055.6.  Flame retardant station work uniforms are not required.

    (2)  Station Work Uniform: The standard uniform for civilian fire fighters will consist of a uniform shirt, uniform trousers, belt, socks, footwear, Air Force Fire Protection Badge, name tag, epaulets or collar brass, and patches. If the fire department only has personnel who are military members, it will be at the discretion of the Installation Commander to have them wear the Airmen Battle Uniform (ABU) in lieu of this uniform.  Funding for civilian uniforms, not BDUs, will be included in the budget process.  Authorized station work uniforms and associated information for replacement will be in accordance with AFI 32-2001 and ANG Sup 1, Attachment 10.

    1.  ANGFPA fire fighters will support organization exercises, inspections and assessments, performing duties and services defined within this Appendix.

    2.  The CA PM or Grantee must submit a request through the USPFO to NGB-PARC-A when it wishes to change the instructions, terms, or conditions of this Appendix.  NGB-PARC-A shall submit the request to NGB/A7XF for review and approval before acting on the request.  If approved, the change shall not be binding until a modification to this Appendix is executed and signed by the grantor and grantee as required by NGR 5-1, Chapter 3.

    3.  The request will not take effect, nor can any expenditure of funds so implied therein take place, until it receives the approval of NGB/A7XF.

    4.  Modifications to this Appendix incorporating initial fiscal year funding will be sent by the CA PM to NGB/A7XF for review and concurrence.

### Section 2409.  Funding Limitation.

    a.  Approved Budget/Annual Funding Program (AFP).  The total dollar amount that NGB anticipates, subject to the availability of funds, being available for reimbursement to the Grantee for its costs in fulfilling its responsibilities under this Appendix. This amount may be increased or decreased by NGB during the fiscal year.

    b.  Total Dollars Obligated.  The total amount of funds obligated for NGB's share under this Appendix. Only funds obligated through an executed CA modification to the Appendix are available for reimbursement to the Grantee. Funds shall be obligated as received by the CA PM.

    c.  In accordance with Section 2407 the following funding limitations are provided for each fiscal year as it occurs.

W912TF-18-2-1024

1 October 2018
30 September 2022

US_00000050

October 2015

1.  Fiscal Year 2018:        Approved Budget/(AFP)        Total Dollars Obligated
                             $_____            $_____

2.  Fiscal Year 2019:        Approved Budget/(AFP)        Total Dollars Obligated
                             $_____            $_____

3.  Fiscal Year 2020:        Approved Budget/(AFP)        Total Dollars Obligated
                             $_____            $_____

4.  Fiscal Year 2021:        Approved Budget/(AFP)        Total Dollars Obligated
                             $_____            $_____

5.  Fiscal Year 2022:        Approved Budget/(AFP)        Total Dollars Obligated
                             $_____            $_____


**Section 2410.  Agreement Particulars.**

The information below shall be recorded by the Grants Officer's Representative (GOR) for compliance with the reporting requirements of the DoD Assistance Award Action Report System (DAADS) and the Federal Funding Accountability and Transparency Act of 2006.

a.  Grantee/Recipient Category:                               Government
b.  Grantee/Recipient Type:                                   State Government
c.  Grantee/Recipient DUNS:                                   808589865
d.  Primary Place of Performance (if different from 'Issued To'   Newington, NH 03801-9998
    on CA Modification Form):
    _____
    (To include Zip + 4)
e.  Grantee/Recipient County                                  Merrimack
    (Primary Place of Performance):                           Newington, NH 03801-9998
f.  Grantee/Recipient Congressional District                  District 2
    (Primary Place of Performance):                           Newington, NH 03801-9998
g.  Major Agency:                                             DoD
h.  Agency Code:                                              5700
i.  Funding Agency:                                           Air
j.  Program Source Agency:                                    57
k.  Transaction Type:                                         Cooperative Agreement
l.  CFDA:                                                     12.401
m.  CFDA Program Title:                                       Operation and Maintenance,
                                                             Air National Guard
n.  Program Source Account-Funding:                           3840
o.  Treasury Appropriation Code:                              3840
p.  Award/Obligation/Action Date:                             1 Oct 2018
q.  Starting Date:                                            1 Oct 2018
r.  Ending Date:                                              30 Sept 2022
s.  Record Type:                                              Individual Action

W912TF-18-2-1024                                             1 October 2018
                                                            30 September 2022

8

October 2015

| | | |
|---|---|---|
| t. | Fiscal Year/Quarter: | 2018/ 1st QTR |
| a. | Unique Federal Award Identification Number (FAIN) | 02-0448407 |
| b. | Approved Budget Amount: | See Annual Appropriation |
| c. | R&D Award (Yes or No) | NO |
| d. | Indirect Cost Rate or CPP Rate: | See State Annual CPP |

W912TF-18-2-1024

1 October 2018
30 September 2022

9

US_00000052

October 2015

## EXECUTION

*IN WITNESS WHEREOF: The parties, by their signatures, execute this Appendix and agree to its terms and conditions.*

| STATE OF NEW HAMPSHIRE: | NATIONAL GUARD BUREAU: |
|---|---|
| BY: *[signature]* | BY: *[signature]* |
| **WILLIAM N. REDDEL III**<br>Maj General, NHNG<br>The Adjutant General | **BRIAN C. ELBERT**, Col, USAF<br>USPFO for New Hampshire |
| 26 JULI7<br>*(Date)* | 25 July 17<br>*(Date)* |
| **Approved as Legal Form:**<br><br>*[signature]*<br>New Hampshire Attorney General's Office<br><br>7/20/2017<br>*(Date)* | **Approved as to Legal Form:**<br><br>*[signature]*<br>**Jeffrey S. Chang**<br>MAJ, NHNG<br>Staff Judge Advocate<br><br>13 July 17<br>*(Date)* |

W912TF-18-2-1024

1 October 2018
30 September 2022

US_00000053